WARREN METLITZKY (CA Bar No. 220758)
**CONRAD | METLITZKY | KANE LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Telephone:    (415) 343-7100
Facsimile:    (415) 343-7101
Email: wmetlitzky@conmetkane.com

BETH A. STEWART (D.C. Bar No. 486684; *pro hac vice*)
DAVID RANDALL J. RISKIN (D.C. Bar No. 992710; *pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone:    (202) 434-5000
Facsimile:    (202) 434-5029
Email: bstewart@wc.com
Email: driskin@wc.com

*Attorneys for Defendant Lyft, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE LYFT, INC. PASSENGER SEXUAL ASSAULT LITIGATION | MDL No. 3171 |
| | Case No. 26-md-03171-RFL |
| This document relates to: | **LYFT, INC.'S CASE-MANAGEMENT STATEMENT** |
| ALL ACTIONS | |

Consistent with the Court's February 12, 2025 Pretrial Order 1 (ECF 2), Lyft provides the following initial case-management statement, addressing the topics the Court has identified.  For ease, Lyft summarizes its position on the structure and sequencing of this litigation as a starting point.

Lyft and plaintiffs agree on a lot.  Both sets of parties benefit from having been counsel in other relevant proceedings and they appear to share the view that reinventing the wheel relative to what has already occurred in the Lyft JCCP would be inefficient and contrary to the JPML's conclusion that "[c]entralization will eliminate duplicative discovery" and "conserve the resources of the parties, their counsel, and the judiciary." *In re Lyft, Inc. Passenger Sexual Assault Litig.*, 2026 WL 369376, at *1 (J.P.M.L. Feb. 5, 2026).  They also appear largely to agree on what litigation events are warranted in this proceeding, which will allow it to move expeditiously while also permitting them to build their cases substantively.  These events include:

- MDL-specific pleadings, with a master long-form complaint and plaintiff-specific short-form complaints.
- Fact sheets from both parties providing information about each plaintiff and the alleged incident.
- Briefing an early dispositive motion addressing the long-form complaint, to streamline the scope of claims.
- A protocol to select a small number of bellwether cases to fully work up for trials, so that the parties can focus their resources on cases that will be tried.
- An opportunity to conduct case-specific discovery in the bellwether cases to prepare them for trial, as well as to have the Court address case-specific motions to dismiss and, for trial matters, motions for summary judgment, expert challenges, and motions *in limine*

The parties will, of course, need to confer on the scope and substance of these steps, as well as on the terms of (i) orders the Court may need to implement these events and (ii) other orders to facilitate the litigation.

It appears the biggest disagreement between the parties is when in the life of the proceeding these, and other steps, should occur.  In particular, proposed leadership counsel suggests the filing of the

1

long-form and short-form complaints should await a "second phase" of the case. This proceeding, however, should start where every other civil action begins: with a complaint and any challenges to the legal bases for the claims in it. Starting there will allow the parties to define the scope of the MDL and set the stage for selecting appropriate bellwether plaintiffs. In a similar vein, proposed leadership indicates that discovery (including document production) should start immediately, but that would mean the parties are engaged in discovery before plaintiffs even have filed their MDL complaints and before dipositive motions.

Lyft believes the sequence detailed in the bullets above is the appropriate order of key events for this proceeding.

## I.  THE APPOINTMENT OF LEAD COUNSEL FOR PLAINTIFFS, AND ANY FURTHER NEEDS FOR ORGANIZATIONAL STRUCTURE

Lyft does not take a position on the appointment of lead counsel for Plaintiffs.

## II.  THE RESPONSIBILITIES AND AUTHORITY OF LEAD COUNSEL

Although Lyft does not take a position on the structure of lead counsel for the Plaintiffs, in order to ensure efficiencies, Lyft proposes that leadership be charged with acting for all Plaintiffs—either personally or by coordinating the efforts of others—in presenting written and oral arguments and submissions to the Court; working with opposing counsel in developing and implementing a litigation plan; conducting discovery; arranging for support services; retaining experts; and ensuring that case deadlines are met. Where notice is provided to plaintiffs' leadership, notice shall be deemed complete upon all plaintiffs' counsel in these proceedings.

## III.  THE STATUS OF ALL LITIGATION PENDING IN THIS MDL MATTER

This proceeding currently comprises 32 actions that were transferred or reassigned to the Court, brought by 32 plaintiffs alleging incidents in 16 sixteen states. There is one related action in the Northern District of California that has yet to be reassigned to this proceeding, *N.R. v. Lyft, Inc.*, No. 26-cv-1684 (N.D. Cal.).[1] Each of these actions appears to allege that a driver on the Lyft platform committed

---

[1] Lyft believes this case needs to be reassigned here. A case-management statement currently is due in the action on May 21, 2026, but should the case be reassigned, Lyft understands the statement deadline would be vacated consistent with Pretrial Order 1.

criminal acts (or intentional torts) against riders, and each plaintiff seeks to hold Lyft liable for that conduct. Lyft has provided a chart summarizing the status of these cases (ECF 43).

The cases are at their earliest stages. In all but three, there has been no dispositive-motions practice and no discovery.[2] Three of the actions, *Means v. Lyft, Inc.*, No. 24-cv-177 (N.D. Cal.); *Stencel v. Lyft, Inc.*, No. 24-cv-1535 (N.D. Cal.); and *Spano v. Lyft, Inc.*, No. 24-cv-799 (N.D. Cal.), were filed in early 2024, and in each the court resolved a motion to dismiss:

- ***Means***: The court dismissed plaintiff's causes of action for common-carrier negligence; vicarious liability; misrepresentation; and negligent hiring, entrustment, supervision, and retention. *Means v. Lyft, Inc.*, 2024 WL 3012795, at *3–10 (N.D. Cal. June 13, 2024). (The court denied Lyft's motion insofar as it argued plaintiff's claims were untimely under California's limitations regime. *Id.* at *2–3.)

- ***Spano***: The court dismissed plaintiff's causes of action for common-carrier negligence; vicarious liability; misrepresentation; statutory unfair competition; and negligent infliction of emotional distress. *Spano v. Lyft, Inc.*, 2024 WL 4211177, at *2–10 (N.D. Cal. July 30, 2024).

- ***Stencel***: The court dismissed plaintiff's causes of action for common-carrier negligence; vicarious liability; and negligent hiring, supervision, retention, and entrustment. *Stencel v. Lyft, Inc.*, 2024 WL 4008752, at *3–7 (N.D. Cal. Aug. 29, 2024). Additionally, in advance of the court's decision, plaintiff dropped her misrepresentation, contract, and statutory unfair-competition claims.

These decisions (and those in related proceedings) should inform discussions between the parties as to the appropriate claims in this proceeding.

**IV.    ANY PREVIOUSLY ENTERED SCHEDULING OR OTHER ORDERS THAT SHOULD BE STAYED OR VACATED**

None beyond what is discussed in the preceding section.

---

[2] As the litigation-summary chart shows, in six actions there are pending administrative motions to proceed under a pseudonym. Lyft does not intend to oppose these motions. In the one case awaiting reassignment, a case-management statement is due in May 2026.

3

## V.    PRIORITY CLAIMS AND DEFENSES LIKELY TO BE PRESENTED

The courts in the Uber MDL, Uber JCCP, and Lyft JCCP; Judge Chesney in *Means*, *Spano*, and *Stencel*; and courts in other federal and state jurisdictions have addressed a host of the causes of action plaintiffs assert in their complaints, under the laws of many of the jurisdictions that would supply the rules of decision in the actions here.  In light of this extensive background authority, Lyft believes the parties' first task in this proceeding is to identify, and then narrow, the causes of action plaintiffs intend to pursue in this action.

The case plan proposed leadership offers contemplates fifteen claims.  Not all, however, are available under the laws that would govern individual plaintiff's cases.  Just by way of example, the case plan references a "common-carrier-negligence" theory, but at least some jurisdictions have enacted statutes holding transportation network companies (like Lyft) are not common carriers, meaning they are not subject to common-carrier-type duties.  *See, e.g.*, *Spano*, 2024 WL 4211177, at *2–5 (Texas law); *Means*, 2024 WL 3012795, at *3–6 (Florida law).  Still other jurisdictions (like Arizona and New York) have done away with such duties altogether.  Another example:  some jurisdictions preclude vicarious-liability claims where the underlying conduct is an intentional sexual tort.  *See, e.g.*, *Spano*, 2024 WL 4211177, at *6–8; *Means*, 2024 WL 3012795, at *6–8.

Lyft hopes that in light of this background law, the parties can agree that at least some causes of action are not viable as a legal matter.  To the extent they cannot, Lyft anticipates filing a dispositive motion as to the long-form complaint.  Lyft also anticipates there will be a need for further threshold dispositive-motions practice in connection with individual bellwether plaintiffs, once those plaintiffs are identified.  Examples of this include testing a plaintiff's pleading of misrepresentation (which requires a plaintiff to allege the claim with particularity) and negligent hiring, retention, and supervision (which requires a plaintiff to allege specific red flags about the at-issue driver).

## VI.    FACTUAL AND LEGAL THRESHOLD ISSUES LIKELY TO BE PRESENTED

In addition to the legal matters discussed above, choice of law may present a threshold question for the Court's resolution, should the parties be unable to agree on what state law governs in each action.  Beyond that, of course, each action will present threshold questions regarding the facts and circumstances of the alleged incident—but those are questions for later stages of this proceeding.

4

**VII.    WHETHER CONSOLIDATED PLEADINGS SHOULD BE PREPARED AND A SCHED-ULE FOR SUCH**

As noted, the parties appear to agree that plaintiffs should prepare a master long-form complaint, along with plaintiff-specific short-form complaints (the template for which should be negotiated by the parties and approved by the Court).  Consistent with this, Lyft proposes the first step here is for the parties to confer regarding those pleadings as contemplated below:

| Event | Date |
| --- | --- |
| Long-form complaint due | June 1, 2026 |
| Template short-form complaint (subject to meet and conferring by the parties) and/or disputes regarding template short-form complaint due for the Court's consideration | June 29, 2026 |
| Short-form complaints due | Within 21 days of Court's entry of short-form complaint for cases in the proceeding<br><br>Within 21 days of transfer or assignment, for other cases. |
| Rule 12 motion challenging long-form complaint (if necessary) due | August 3, 2026 |
| Confer about additional long-form challenges (if necessary) | 2 weeks after long-form Rule 12 motion decided |
| Case-management statement addressing remaining proceedings and challenges to short-form complaints | 4 weeks after long-form Rule 12 motion decided |

Depending on the Court's ruling on any motions to dismiss, and any issues regarding short-form complaint submissions, additional conferences between the parties regarding amended pleadings, surviving claims, or other disputes may be required.

**VIII.    A PROCESS FOR HANDLING REQUESTS TO PROCEED UNDER A PSEUDONYM**

Lyft does not intend to oppose motions by plaintiffs seeking to proceed under a pseudonym before trial, although Lyft expects, consistent with what has occurred in other proceedings, that plaintiffs will proceed under their given name at trial.

Plaintiffs, however, should be required to provide to Lyft their true identity and sufficient corroborating information (for example, date of birth and last four digits of a social-security number) with or shortly after a complaint is filed.  This will permit Lyft to confirm the plaintiff was a user of its service and evaluate the asserted claim.  The Court should couple this requirement with an order requiring plaintiffs to provide proof that the incident ride occurred, such as through a verified ride receipt, to identify and weed out unsupported claims.  (As the Court likely knows, this has been a recurring issue in the Uber MDL.)

**IX.    A PROCESS FOR HANDLING MOTIONS TO REMAND**

Lyft reserves all rights pursuant to *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998).  Beyond that, at this stage of the proceedings, Lyft believes it is premature to discuss which cases will need to be remanded, or how those cases will be identified.  Lyft recommends that the parties and Court reserve on this issue, and revisit once the parties have engaged on negotiations for structuring of case-specific work-up and discussion of procedures for identifying bellwether case candidates.  In the event cases are identified for remand, Lyft anticipates that the parties would follow applicable Judicial Panel of Multidistrict Litigation Rules governing remand (Rules 10.1–10.4).

**X.    A PLAN AND SCHEDULE FOR EXCHANGE OF INFORMATION ABOUT THE FACTUAL BASES FOR PARTIES' CLAIMS AND DEFENSES**

The parties agree they should exchange fact sheets—reflecting basic information about each case—early in the proceeding.  And they already have experience doing so in the Lyft JCCP.  In light of that, and rather than negotiating new fact sheets, the parties should use the fact sheets from the Lyft JCCP, subject to discussions as to logistics so as to ensure that information provided in fact sheets is available in a format that is usable and extractable for purposes of further assessment by the parties and the Court, and the Special Master  (A copy of those fact sheets is appended to the JCCP summary.)

Of note, proposed leadership contemplates that the fact-sheet process would not occur until what it calls the "second phase" of the litigation.  Lyft believes, however, the parties should be required to exchange fact sheets as soon as possible given that they will form the basis for the scope of claims to be assessed by the Court and for identifying representative cases to be considered as part of the eventual bellwether-selection process.

6

**XI.    THE POSSIBILITY OF BIFURCATING PROCEEDINGS TO ADDRESS THRESHOLD ISSUES BEFORE ANY PLAINTIFF-SPECIFIC QUESTIONS**

As discussed above, Lyft proposes a bifurcated pleading-and-motion-to-dismiss approach similar to the one used in the Uber MDL.  To summarize:  Plaintiffs will file their long-form complaint and Lyft will make any categorical challenges to causes of action based on applicable state law—with the parties either agreeing that certain causes of action are unavailable or presenting their disputes to the Court.

Once any threshold motions practice is complete and the parties have fact sheets, it then would make sense to set up a bellwether-selection process, which would allow the parties to identify a smaller set of cases for full work up (and put them in the mix for bellwether trials).  Both parties anticipate case-specific motions practice for the bellwether cases, including summary-judgment motions, expert challenges, and motions *in limine* with respect to any case set for trial.

**XII.    A SCHEDULE FOR DISCOVERY AND ANY AGREEMENTS CONCERNING THE USE OF DISCOVERY FROM THE CALIFORNIA STATE COURT COORDINATED PROCEEDING**

As Lyft detailed in the recently filed JCCP summary (ECF 44), corporate discovery in the JCCP has been extensive:

- Collection from more than 50 Lyft corporate custodians using search terms, with the production totaling more than 200,000 documents comprising 1.4 million pages.  Lyft's original custodial collections were for the period December 1, 2012 through December 31, 2021; per the parties' negotiation, litigation in front of the discovery referee, and agreement, it completed an additional collection from narrower set of custodians (and terms) for the period January 1, 2022 through December 31, 2023.  Lyft's custodial collections drew from emails, Slack messages, and materials saved through the Google platform (which include, for example, PowerPoint presentations and Excel spreadsheets).
- Depositions of more than 100 Lyft witnesses, individual plaintiffs, and third parties.  This has included corporate person-most-qualified depositions on matters such as Lyft information-technology systems, background-check and driver-vetting processes, safety features, driver discipline, and Community Safety Report.

7

- Opinions from and depositions of two dozen experts, addressing both matters general to the rideshare industry, such as background checks, statistics, and in-car cameras (a number of these witnesses also were designated in the Uber MDL), as well as specific to plaintiffs, such as their individual assertions of harm.

That discovery (particularly the discovery of Lyft) should thus serve as the foundation for discovery here, as both parties seem to recognize.

Plaintiffs' proposed leadership suggests that additional corporate discovery may be necessary, and the parties have had their first discussions on this issue. As reflected in the JCCP summary, the parties will confer further about any additional discovery plaintiffs believe they need. Lyft notes that insofar as plaintiffs' counsel here intends to pursue further corporate discovery, such discovery should be coordinated with the Lyft JCCP. Any additional corporate discovery should, of course, be targeted to discovery not already conducted in the Lyft JCCP.

Lyft agrees with the Court's Standing Civil Order that the close of discovery should occur roughly six months before the beginning of trial.

## XIII.   STEPS TAKEN TO PRESERVE RELEVANT EVIDENCE, INCLUDING ELECTRONI-CALLY STORED INFORMATION

Consistent with Pretrial Order 1, Lyft has taken reasonable steps to preserve evidence relevant to this litigation, including by virtue of the fact that Lyft's custodial data, such as employee email, Slack messages, and Google documents, is maintained in the normal course of business. As regards data of individual riders and drivers on the Lyft platform in particular, when Lyft is notified of litigation against it, it works to identify the ride at issue and related case information so it can place the rider's and driver's account information (which includes their profiles and ride data, and in the case of the driver, background-check information) on a litigation hold. As noted, information disclosed in a complaint may be insufficient for Lyft to identify the alleged, and in these instances Lyft either receives additional information from a plaintiff informally to identify the ride or must await the production of a fact sheet. Insofar as Lyft cannot identify the alleged-incident rides in plaintiffs' complaints here, it will work with plaintiffs' counsel to obtain additional information. (This concern reinforces the importance of plaintiffs providing ride-proofs and other necessary identifying information and details early on (i.e., along with

8

their short-form complaint and/or plaintiff fact sheet), so that Lyft can work to preserve available information and data with respect to individual rides and/or incidents.)

## XIV. WHETHER ANY MATTERS SHOULD BE REFERRED TO A MAGISTRATE JUDGE OR MASTER OTHER THAN DISCOVERY

The Court indicated that it anticipates referring discovery matters to Judge Cisneros, and Lyft does not propose any other matters be assigned to Judge Cisneros.  Aside from settlement matters, Lyft does not propose referring any other non-discovery matters to a magistrate judge or special master.

## XV. A PROPOSED SCHEDULE FOR ALTERNATIVE DISPUTE RESOLUTION

The parties jointly proposed Fouad Kurdi as special settlement master for this matter (ECF 26).  As the Court saw from that joint filing, Kurdi has been active in addressing cases that are part of the JCCP, as well as claims against Lyft generally.  Lyft anticipates that will continue, and therefore it does not believe a specific alternative-dispute-resolution schedule is needed at this time.

## XVI. A PLAN FOR ESTABLISHING A CASE WEBSITE

Lyft understands the Court already has a website for this MDL, accessible to counsel, parties, the public, and the press free of charge at https://cand.uscourts.gov/cases-e-filing/cases/326-md-03171-rfl/means-v-lyft-inc.  Lyft will work with the Court, Clerk of Court, and plaintiffs' counsel to ensure the website reflects a list of dates and times of upcoming proceedings, along with significant court orders and other documents.

## XVII. THE IDENTIFIED TOPICS FOR A CASE PLAN

*Litigation Sequence*.  As Lyft's proposal above sets forth, Lyft believes the appropriate sequencing of this litigation is as follows:

- Filing of long-form complaint and motions practice regarding threshold issues relating to that complaint.
- Negotiation of a short-form complaint template, to be filed for the Court's approval.  Once approved, filing of the short-form complaints.
- Completion of fact sheets (with the first three matters proceeding roughly simultaneously).
- Selection of bellwether plaintiffs to fully work up for trials.
- Threshold motions practice for the bellwether plaintiffs, focused on pleading issues present

9

in their individual cases.

- Discovery regarding the bellwether plaintiffs, as well as any additional Lyft corporate discovery (coordinated with the JCCP).

- Selection of bellwether trial plaintiffs, and pre-trial motions practice, including summary judgment, expert challenges, and motions *in limine*.

***Common-Benefit Fund.***   Lyft takes no position on the creation of a common-benefit fund.  But if the Court creates such a fund, Lyft should have no role in funding or administering it.  Lyft recognizes that other common-benefit orders, including those in the Uber JCCP and MDL, contemplate the defendant financing a fund through settlement withholdings.  But that is not required. *See In re San Juan DuPont Plaza Hotel Fire Litig.*, 111 F.3d 220, 223 & n.2 (1st Cir. 1997) (plaintiff's counsel to deposit fees); *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 164 (4th Cir. 1992) (same); *cf. In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 267 (E.D.N.Y. 2006) ("Lilly has no responsibility to provide for, or administer, the fund.").  Lyft should not bear the financing and administrative burdens of plaintiffs' common-benefit fund; those burdens should rest on plaintiffs' counsel collectively.

## XVIII. ADDITIONAL FEDERAL RULE OF CIVIL PROCEDURE 16.1(B) TOPICS

### A.    Schedule for Additional Case-Management Conferences.

Given the interim steps it proposes, Lyft believes the next case-management conference should occur in June 2026, subject to the Court's convenience and availability.  This will give the parties an opportunity to confer regarding relevant issues and crystallize any disputes.  At the next conference, the parties can discuss with the Court a cadence of case-management conferences that will best serve the needs of the litigation.

### B.    How to Manage Direct Filing of New Actions in the MDL Proceedings.

Lyft will work with plaintiffs' counsel on a proposed pretrial order regarding direct filing.  Lyft submits, however, that direct filing should not constitute a determination by the Court that venue is proper in this district, nor a waiver of personal jurisdiction or service.  Nor should the filing of an action directly in this proceeding constitute, for any party, a waiver pursuant to *Lexecon*.

10

**C.      Methods for Coordinating with Related Actions.**

In addition to direct filing into this proceeding, Lyft anticipates that either it or plaintiff's counsel will notice as potential tag-along actions similar cases filed in districts other than the Northern District of California.

**D.      Likely Pretrial Motions**

As noted above, Lyft anticipates the following significant pretrial motions:

- At least one motion to dismiss the long-form complaint.
- Motions to dismiss claims in one or more short-form complaints in the bellwether cases.
- For any case proceeding to trial:  a summary-judgment motion, expert challenges, and motions *in limine.*
- Briefing on selection of bellwether trial cases.

Lyft, of course, expects that both parties will file additional motions in advance of trial.

Case No. 3:26-md-03171-RFL                                        LYFT'S CASE-MANAGEMENT STATEMENT

DATED:  March 12, 2026

*/s/ David Randall J. Riskin*

Beth A. Stewart
David Randall J. Riskin
WILLIAMS & CONNOLLY LLP
680 Maine Ave., S.W.
Washington, DC 20024
Tel:   (202) 434-5000
Fax:   (202) 434-5029

Warren Metlitzky
CONRAD | METLITZKY | KANE LLP
217 Leidesdorff Street
San Francisco, CA 94111
Tel:   (415) 343-7100
Fax:   (415) 343-7101

*Attorneys for Defendant Lyft, Inc.*