UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: LYFT, INC. PASSENGER SEXUAL ASSAULT LITIGATION<br><br><br>This Document Relates to:<br><br>ALL ACTIONS | MDL No. 3171<br><br>[PROPOSED] PRETRIAL ORDER NO. 16: ESTABLISHING A COMMON BENEFIT FEE AND EXPENSE FUND |

**The Court adopts Plaintiffs' proposed method to reimburse Lyft for administering the holdback. Lyft's proposal would be too burdensome and costly.**

**THIS ORDER** is entered to supplement Pretrial Order No. 10 (Timekeeping and Expenses Protocol) entered as amended on June 4, 2026 in this litigation (Dkt. No. 189). PTO 10 remains in full force and effect and is hereby supplemented as follows:

1.      On June 4, 2026, this Court entered PTO 10 (Dkt. No. 189), which sets forth detailed instructions for the performance of common benefit work, and for the type of work and expenses that could qualify for potential compensation and reimbursement. Under this authority and with this guidance, Plaintiffs' Co-Lead Counsel, the members of the Plaintiffs' Steering Committee ("PSC"), and other authorized counsel (collectively, "Participating Counsel"), have done and will continue to do common benefit work on a contingent basis. Participating Counsel has invested and will continue to invest substantial time and financial resources related to motion practice, discovery, and bellwether trials. This work has and

will benefit all Plaintiffs with claims against Defendants related to the subject matter of this MDL and the parallel proceedings in the JCCP.

2.      On May 10, 2021, in the related state court coordinated proceedings, In re Lyft Rideshare Cases, JCCP 5061 (hereinafter "JCCP"), Hon. Andrew Y.S. Cheng appointed Plaintiffs' Co-Lead[1] and Liaison Counsel[2] (collectively referred to as "JCCP Leadership"). Pursuant to that authority, JCCP Leadership has done and will continue to do common benefit work on a contingent basis. The JCCP Leadership has invested and will continue to invest substantial time and financial resources related to motion practice, discovery, and bellwether trials. This work has and will benefit all Plaintiffs with claims related to the subject matter of the JCCP and this MDL.

3.      The MDL and the JCCP are collectively referred to in this Order as "Lead Actions." Co-Lead Counsel for the MDL and Co-Lead and Liaison Counsel for the JCCP (collectively referred to as "Leadership Groups") have been working cooperatively concerning discovery and coordination of the Lead Actions. Both Leadership Groups agree that it is important to work cooperatively to design a common benefit system that recognizes the contributions within both Lead Actions.

4.      Co-Lead Counsel in the JCCP will seek entry of a similar order ("Parallel Common Benefit Order") from Hon. Jeffrey S. Ross. The goal of the Parallel Common Benefit Order will be to enable a substantially similar system in the JCCP action governing its fees, expenses, common benefit work assignments, and reporting as outlined in this Order. Co-Lead Counsel from the Lead Actions agree that parallel common benefit orders will facilitate cooperation and coordination between the federal and state cases.

5.      It is just and appropriate to provide a system of assessment on any settlements and recoveries, to which this substantial effort has contributed, commensurate with common benefit assessments ordered in recent and contemporary MDLs.

6.      The Court enters this Order: (1) to avoid unnecessary conflicts and expense, conserve judicial resources, and expedite the disposition of all the cases in this complex litigation; (2) to provide for the equitable sharing among Plaintiffs and their counsel of the burden of services performed and expenses

---

[1] Levin Simes, LLP, Williams Hart Boundas, LLP, and Estey-Bomberger, LLP
[2] Cutter Law PC

incurred by attorneys acting for the common benefit of all Plaintiffs in this complex litigation (collectively, "Common Benefit Work"); and (3) to enable Plaintiffs' attorneys who wish to obtain the work-product of the PSC and the work-product of others who perform authorized common benefit work (collectively, the "Common Benefit Work Product"), an opportunity to obtain such work product.

7.    For purposes of this and other common benefit-related Orders, the phrase "common benefit" refers to Leadership Group-authorized and timely reported work performed, and costs incurred on behalf of all Plaintiffs in the Lead Actions.

## II.    GOVERNING PRINCIPLES—THE COMMON BENEFIT DOCTRINE

8.    This Order is entered to provide for the fair and equitable sharing, among all beneficiaries, of the value of the services performed and expenses incurred by attorneys acting for the common benefit of all plaintiffs in this complex litigation. This is accomplished by directing Defendants who have appeared in these proceedings, and over whom this Court has exercised jurisdiction, in the event of settlement, verdicts, and/or other recoveries, to either hold back or self-fund a designated percentage of their related settlements or judgments. The Court's authority derives from the Supreme Court's common benefit doctrine, as established in *Trustees v. Greenough*, 105 U.S. 527 (1881); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1884); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); and *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).

9.    This and many other courts have properly exercised their inherent case management authority to apply the common benefit doctrine in MDL proceedings. *See In re: Uber Techs, Inc. Passenger Sexual Assault Litig.*, No. 3:23-md-03084, ECF No. 1754 (N.D. Cal. Oct. 16, 2024); *In re: McKinsey & Co., Inc. Nat'l Prescrip. Opiate Consultant Litig.*, No. 21-md-2996, ECF No. 567 (N.D. Cal. June 30, 2023); *In re: Juul Labs, Inc. Mkt., Sales Prac., & Prods. Liab. Litig.*, No. 19-md-2913, ECF No. 586 (N.D. Cal. May 27, 2020); *In re Social Media Litig.*, No. 22-md-03047, ECF No. 190 (N.D. Cal. Mar. 15, 2023); *In re Bard IVC Filters Prods. Liab. Litig.*, 603 F. Supp. 822 (D. Ariz. 2022); *In re Cook Med., Inc., Pelvic Repair Sys.*, 365 F. Supp. 3d 685, 695 (S.D.W. Va. 2019) (collecting cases); *In re Zyprexa Prods. Liab. Litig.* 467 F. Supp. 2d 256, 265–67 (E.D.N.Y. 2009); *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.,* MDL No. 1699, ECF No. 2507; *In re Sulzer Hip Prosthesis & Knee Prosthesis Prods. Liab. Litig.*, 268 F. Supp. 2d 907 (N.D. Ohio 2003), *aff'd*, 398 F.3d 778 (6th Cir. 2005); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp.

522, 525–29 (D. Nev. 1987); *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1019–21 (5th Cir. 1977). The Third Circuit most recently endorsed this important case management tool in *Home Depot USA, Inc. v. LaFarge North America, Inc.*, 59 F. 4th 55 (3d Cir. 2023).

10.     Use of the common benefit doctrine to compensate attorneys who work for the common good of all plaintiffs is necessary for MDLs to be an effective means for the timely and economic resolution of cases. Management of complex MDLs would be impossible without court-appointed counsel. *See Bard IVC Filters*, 603 F. Supp. 3d at 831. If court-appointed counsel "are to be an effective tool, the court must have the means at its disposal to order appropriate compensation for them. The court's power is illusory if it is dependent upon [court-appointed] counsel's performing the duties desired of them for no additional compensation." *Everglades*, 549 F.2d at 1012. Thus, in consolidated MDL proceedings, it is standard practice to order that a percentage of all recoveries be contributed to a fund to compensate attorneys who provide work for the common benefit of all plaintiffs. *Manual for Complex Litigation* § 20.312 (4th ed., Federal Judicial Center 2004) ("MDL judges generally issue orders directing that defendants who settle MDL-related cases contribute a fixed percentage of the settlement to a general fund to pay national counsel.").

## III.     APPLICATION AND SCOPE

11.     The terms "cases" and "claims" in this Section refer to cases or claims arising from alleged sexual misconduct or sexual assaults committed by a Lyft driver against a Lyft passenger, including claims against any Lyft affiliate or third party.

12.     This Order applies to:

a)     All cases or claims now or later subject to the jurisdiction of this Court in this MDL, regardless of whether the case is resolved while the case is pending before this Court, after a remand from this Court to the transferor court, or in bankruptcy (whether or not such a case reaches final judgment while in the jurisdiction of this Court);

b)     All cases or claims, filed or unfiled, in which any counsel associated with any one case filed in or transferred to this MDL has a fee interest; and,

c)     All cases or claims settled pursuant to any settlement agreement negotiated or supervised by Plaintiffs' Co-Lead Counsel.

d)     All cases, filed or unfiled, in which any counsel associated has access to or uses MDL work product.

[PROPOSED] ORDER ESTABLISHING A COMMON
BENEFIT FEE AND EXPENSE FUND
MDL NO. 3171

e)    All cases, filed or unfiled, in which any counsel associated signs a Participation Agreement.

13.    This Order does not apply to the following cases:

a)    A case filed in the California Judicial Council Coordination Proceedings In re Lyft Rideshare Cases, No. CJC-20-005061 (1) by a plaintiff Lyft passenger who is domiciled in California at the time of filing, and (2) concerns an incident or incidents of alleged sexual assault/misconduct by a Lyft driver that occurred in California. Such cases will be the subject of a Parallel Common Benefit Order submitted by JCCP Leadership to the Hon. Jeffrey S. Ross.

b)    An unfiled case (1) by a plaintiff Lyft passenger (2) who is domiciled in California at the time of settlement and (3) concerns an incident or incidents of alleged sexual assault/misconduct by a Lyft driver that occurred in California. Such cases will be the subject of a Parallel Common Benefit Order submitted by JCCP Leadership to the Hon. Jeffrey S. Ross.

c)    A case filed in state court in which all attorneys representing the plaintiff (1) do not receive or use MDL work product and (2) do not sign (and are not deemed to have signed) a Participation Agreement. Notwithstanding this provision, any case settled pursuant to an MDL-negotiated or supervised settlement agreement is subject to this Order, even if the case was filed in state court.

14.    The Leadership Groups for the Lead Actions have agreed to use a single special master who will have responsibility for evaluating the common benefit work performed in both Lead Actions and resolve disputes with respect to compensation for common benefit work performed in either or both Lead Actions. (See Section V below.)

**IV.    PLAINTIFFS' FEE AND EXPENSE ACCOUNTS**

15.    Plaintiffs' Co-Lead Counsel is directed to request this Court to establish a 26 C.F.R. § 1.468B-1 Qualified Settlement Fund ("QSF") with subaccounts (the "Accounts") to receive and disperse funds consistent with this Order (the "Funds"). These Funds will be held subject to the direction of this Court. The first subaccount shall be designated as the "Fee Fund," and the second should be designated as the "Expense Fund."

16.    For the purpose of efficiency, the Leadership Groups have concluded that it would be beneficial for both Lead Actions to engage the same escrow agent, Goldman Sachs Bank USA, and the same administrator, ARCHER Systems, LLC (the "Administrator").

### A.    Establishing the Fee and Expense Accounts

17.    Plaintiffs' Co-Lead Counsel shall move this Court to appoint the "Administrator" to oversee the Accounts and to receive and disburse funds in the event of settlements or verdicts as provided in this Order and any subsequent Orders. The Accounts will be held subject to the direction of this Court.

### B.    Administration of the Fee and Expense Accounts

18.    The Accounts shall be established at Goldman Sachs Bank USA, a commercial bank chosen by Plaintiffs' Co-Lead Counsel. Goldman Sachs Bank USA shall be the "Escrow Agent."

19.    No disbursement shall be made from the Accounts other than by Order of this Court pursuant to a petition requesting an award of fees and reimbursement of expenses (a "Petition"). No Petition shall be filed without leave of Court. No person or entity has any right to make any claim against any of the amounts held in the Accounts except to the extent this Court issues an Order directing the disbursement of any amounts to such a person or entity. The rights of any such person or entity are limited to the amount ordered by the Court to be so disbursed to that particular person or entity. At the appropriate time, the MDL Co-Lead Counsel shall make recommendations to the Special Master and the Court for awards of common benefit fees and costs. Any and all such awards require Court approval on noticed motions.

20.    The amounts held in the Accounts shall not constitute the separate property of any person or entity or be subject to garnishment or attachment for the debts of any person or entity. However, any specific amounts ordered by the Court to be disbursed to a person or entity, upon the entry of such an Order, can then be subject to garnishment or attachment, limited to the amount of the disbursement so ordered. These limitations do not preclude a person or entity from transferring, assigning, or creating a security interest in potential disbursements from the Accounts to which such person or entity may be entitled as determined by the Court, if permitted by applicable state laws and if subject to the conditions and contingencies of this Order. However, no notice of lien or security interest in potential disbursements or of a transfer or assignment of a right of potential disbursements shall be effective unless and until it is filed in this Court and served upon the Administrator.

21.    In connection with the administrative services, the Administrator shall:

      a)    Have all such power and authority over the Accounts as necessary or convenient to exercise the authority granted in this Order;

b)      Keep and report periodically to the Court, to the extent requested by the Court, an accounting of the funds received, maintained, and disbursed relating to the Accounts;

c)      Have the authority to instruct the Escrow Agent with respect to permitted investments of the Accounts;

d)      Make decisions and take action with respect to treatment of the Accounts for purposes of compliance with the Internal Revenue Code and any applicable local or state tax codes, including creating reports, maintaining and reporting relating to the Accounts and their income, if any, derived therefrom, and as in a Qualified Settlement Fund or such other entity as the Administrator deems appropriate;

e)      Out of the assets of the Accounts, purchase and maintain reasonable amounts and types of insurance for errors and omissions or fidelity bonds;

f)      Have the authority to procure, upon consultation with the CBC, professional accounting, legal, and other services for the purposes of carrying out the tasks described in this Order, and to be reimbursed for the expenses of such services; and,

g)      Have the authority to adopt and implement reasonable procedures consistent with this Order and in consultation with the CBC.

22.      Unless required by law (as with a settlement containing a class action component in which certain class members settle parallel to, but outside of, the settlement class), or as otherwise agreed to by Defendant and Co-Lead Counsel, details of any individual settlement agreement, individual settlement amount, and individual amounts deposited into the Accounts shall be treated as confidential by the Administrator and shall not be disclosed by the Administrator to the public, any non-settling plaintiffs' counsel, including Co-Lead Counsel, the Court, or the Court's designee, unless the Court requests that it receive that information *in camera*. The Administrator shall, however, provide statements to the Court upon its request, showing only the aggregate of the monthly deposits, disbursements, interest earned, financial institution charges, if any, and current balance.

C.      **Requirements of the Escrow Agent**

23.      The Escrow Agent shall be a commercial bank that: (1) has deposits insured by the Federal Deposit Insurance Corporation; (2) is organized under the laws of the United States or any state thereof; and (3) has a total risk-based capital in excess of $5 billion and meets the minimum risk-based ratios established under the Federal Deposit Insurance Corporation Improvement Act of 1991. The Escrow Agent may act as paying agent, depository, custodian, or trustee with respect to funds it holds.

[PROPOSED] ORDER ESTABLISHING A COMMON
BENEFIT FEE AND EXPENSE FUND
MDL NO. 3171

24.     The Administrator shall consider, in designating the Escrow Agent and in procuring professional services, the charges that the Escrow Agent or provider of professional services will impose for its actions and the ability of the Escrow Agent or provider of professional services to undertake the tasks called for with efficiency and responsiveness.

25.     The Escrow Agent shall not acquire or hold for longer than 90 days, any debt securities, certificates, or investments unless such instruments are a U.S. Treasury Bill, U.S. Treasury Money Market, U.S. Government Money Market, or similar type of account guaranteed by the United States or an agency thereof, including an FDIC-Insured Account. The U.S. Treasury Money Market or U.S. Government Money Market must be registered under the Investment Company Act of 1940, as amended. In determining investments to be held by the Escrow Agent, primary regard shall be given by the Escrow Agent to safety of principal.

26.     The reasonable fees and reasonable expenses of the Administrator and Escrow Agent shall be paid by the PSC. The Administrator and Escrow Agent shall each provide to the PSC their statements for their reasonable fees and reasonable expenses charged on a monthly basis. When this Court authorizes the filing of a Petition, the reasonable fees and expenses of the Administrator and Escrow Agent that were paid by the PSC may be included as items for reimbursement from the Accounts. The Petition shall include copies of the statements of the Administrator and Escrow Agent that had been submitted on a monthly basis to the PSC to support the request for reimbursement of such payments made by the PSC for which reimbursement is requested.

## V.     SPECIAL MASTER REVIEW AND ALLOCATION OF COMMON BENEFIT FEES AND EXPENSES

### A.     Appointment and Authority of the Special Master and the Common Benefit Committee

27.     The Court appoints Cathy Yanni of JAMS as Common Benefit Special Master (the "Special Master") to audit reported common benefit time and costs, review submissions for common benefit attorneys' fees and expenses, allocate such fees and expenses among Participating Counsel, and resolve any disputes concerning the allocation, subject to the limited review provided in Section V(G) below.

28.     Ms. Yanni, as Common Benefit Special Master in the MDL and Common Benefit Referee in the JCCP, will perform these functions for the Lead Actions.

29. The Special Master shall have the authority necessary to carry out her responsibilities under this Order, including the authority to establish procedures for submissions, request additional information, convene hearings, and adopt reasonable protocols consistent with this Order. The reasonable fees and costs of the Special Master shall be paid from the Accounts, subject to approval by the Court.

30. The PSC has established a Common Benefit Committee ("CBC"), which is comprised of Plaintiffs' Co-Lead Counsel. The CBC shall have the duty to enforce common benefit reporting requirements, periodically audit the common benefit time and expense submissions, and shall have the responsibility, as more fully explained below, to make recommendations regarding attorneys' fees and expense allocations.

### B.   Initial Fee and Expense Submissions

31. Within thirty (30) days of the Court's order directing submissions, any Participating Counsel that seeks an award of common benefit fees or reimbursement of common benefit expenses shall submit its initial fee and expense application (the "Initial Fee and Expense Application") directly to the CBC.

32. Each Initial Fee and Expense Application shall include:

a) A narrative, not to exceed ten (10) pages, describing the firm's common benefit contributions, including the specific tasks performed, leadership or committee roles, results obtained, and the benefit conferred on Plaintiffs;

b) A summary of total common benefit hours, exported from Rubris by timekeeper, position, and hourly rate, together with the firm's total lodestar;

c) A summary and itemization of common benefit expenses, exported from Rubris;

d) A summary and itemization of common benefit held costs;

e) A summary and itemization of common benefit assessments previously paid into the Accounts;

f) A sworn declaration from a firm representative attesting to the accuracy of the submission and to the firm's compliance with this Order and all other Court orders governing common benefit work; and

g) Any additional materials the firm wishes the CBC and the Special Master to consider.

33. Initial Fee and Expense Applications shall be treated as confidential. Submissions shall be provided by email to the CBC only and shall not be served on the Special Master, Participating Counsel, or filed on the public docket absent further Order of this Court.

34.    Except upon request of the CBC or Special Master, no firm may supplement its Initial Fee and Expense Application after the submission deadline.

**C.    Allocation Criteria**

35.    In allocating common benefit fees and expenses among Participating Counsel, the CBC and Special Master, respectively, shall consider the following factors, which are not exhaustive and need not be accorded equal weight:

a)    The nature, extent, and quality of the firm's common benefit work, including any leadership role held and committee service;

b)    The results obtained for Plaintiffs, both in absolute terms and in relation to the firm's particular contributions;

c)    The complexity and novelty of the issues addressed and the skill required to perform the work;

d)    The level of financial and professional risk undertaken, including advances of held costs and assessments paid into the Accounts;

e)    The duration and intensity of the firm's participation, including any sustained commitment during critical phases of the litigation;

f)    The firm's lodestar and the reasonableness of the hours and rates submitted;

g)    Coordination with, and contributions to, the efforts of the Leadership Groups; and

h)    Any other factor the CBC or Special Master determines to be relevant to a fair and equitable allocation.

**D.    CBC Recommendation of Allocation to Special Master**

36.    Within thirty (30) days, the CBC shall issue a written recommendation (the "CBC Allocation Recommendation") to the Special Master with a copy to her assistant.

37.    The CBC Allocation Recommendation shall include:

a)    A narrative, not to exceed twenty-five (25) pages explaining the reasoning and rationale of the CBC's recommendation for allocating common benefit attorneys' fees and expenses, including discussing each firm's common benefit contributions, tasks performed, leadership or committee roles, results obtained, and the benefit conferred on Plaintiffs; and

b)    The documents submitted to the CBC, described above in Paragraph 32(a)-(g).

38.    Should the CBC adopt the attorneys' fees and expenses requested in a Participating Counsel's Initial Fee and Expense Application, the CBC need not address such a recommendation in the CBC Allocation Recommendation.

**E.    Interim Report and Award**

39.    Within forty-five (45) days after the submission of the CBC Allocation Recommendation to the Special Master, the Special Master shall issue a written Interim Report either adopting the CBC Allocation Recommendation or proposing a modified allocation of common benefit fees and expenses among Participating Counsel (the "Interim Report").

40.    The Interim Report shall set forth the proposed award to each firm and a concise statement of the Special Master's reasoning, including the principal factors supporting the allocation.

41.    The Interim Report shall be served on the CBC and each Participating Counsel that made an Initial Fee and Expense Application. Each firm shall receive its own allocation and the allocations awarded to other firms. Participation Counsel shall not receive the substance of any other firm's Initial Fee and Expense Application, other than what is written in the Interim Report.

**F.    Objections and Redetermination**

42.    Any Participating Counsel that made an Initial Fee and Expense Application may object to the Interim Report and request redetermination of its allocation by submitting a written objection (an "Objection") to the Special Master within twenty-one (21) days after service of the Interim Report.

43.    An Objection shall (a) identify each aspect of the Interim Report to which the firm objects, (b) state with particularity the grounds for the Objection, (c) specify the relief requested, and (d) not exceed ten (10) pages. No new documentary evidence may be submitted with an Objection absent leave of the Special Master.

44.    Any firm whose allocation would be affected by a requested redetermination may, within fourteen (14) days after service of an Objection, request permission from the Special Master to submit a written response to the Special Master, not to exceed ten (10) pages. No reply from an Objecting Participating Counsel will be accepted.

45.    The Special Master may, in her discretion, convene a hearing, request additional briefing, or resolve any Objection on the papers.

[PROPOSED] ORDER ESTABLISHING A COMMON
BENEFIT FEE AND EXPENSE FUND
MDL NO. 3171

46. Within thirty (30) days after the deadline for responses, the Special Master shall issue a written determination to the CBC and Participating Counsel resolving all Objections.

47. Any firm that does not timely submit an Objection shall be deemed to have waived any challenge to the Interim Report and to the Final Award that follows.

**G.   Final Report and Award; Review by the Court**

48. Upon resolution of all Objections, the Special Master shall issue a Final Report and Award, which may be the same as, or different from, the Interim Report.

49. The Special Master shall transmit the Final Report and Award to the Court under seal and share a copy confidentially with the CBC. The Final Report and Award shall set forth the amount allocated to each firm and the Special Master's reasoning.

50. After the Final Award has been entered by the Court, any disputes or requests for relief from or requests for modification of the Final Award will be decided by the Court in the exercise of its continuing jurisdiction over the parties and authority and discretion under the common benefit doctrine.

**VI.   PARTICIPATION AGREEMENT AND ELIGIBLE PARTICIPATING COUNSEL**

51. Pursuant to PTO 10, the recovery of common benefit attorneys' fees and cost reimbursements will be limited to "Participating Counsel," defined as Plaintiffs' Co-Lead Counsel and members of the PSC (along with members and staff of their respective firms), or other counsel authorized in writing by Plaintiffs' Co-Lead Counsel to perform work that may be considered for common benefit compensation.

52. An agreement attached hereto as **Exhibit 1** (the "Participation Agreement") is approved by this Court for signature by attorneys for the purposes set forth below.

53. The Participation Agreement can be entered into by plaintiffs' attorneys on a voluntary basis. The Participation Agreement is a private and cooperative agreement between the PSC and plaintiffs' attorneys only. It is not an agreement with any Defendant.

54. There is no need for an attorney who already has a case filed in or transferred to this Court or who represents a plaintiff or claimant in any MDL proceeding to sign the Participation Agreement, because they are automatically subject to PTO 10, and any amendments, with regard to all cases in which they have a fee interest, regardless of whether any of their other cases are filed in other jurisdictions, or not yet filed, excepting the cases identified in Paragraph 13, above.

55.     Any attorney appointed by the Court as Co-Lead Counsel or to the PSC, and that attorney's firm, are automatically deemed signatories to the Participation Agreement.

56.     Plaintiffs' attorneys who do not execute the Participation Agreement and who are not deemed signatories to the Participation Agreement, or are otherwise not bound to common benefit assessments pursuant to PTO 10, and any amendments, are hereinafter referred to as "Non-Participating Counsel."

57.     Participating Counsel who execute the Participation Agreement shall be entitled to access Common Benefit Work Product for use in all of the cases or claims of their clients, whether the case or claim has been filed or not, and if filed, for use in any court in which it was filed even if not filed in this MDL, and for use for the benefit of non-filed claims, including any for which a tolling agreement exists. All claims or cases of a counsel who has executed the Participation Agreement shall be assessed whether the claim or case has or had not been filed, and all claims or cases in which a counsel who has executed the Participation Agreement has a fee interest shall be assessed.

58.     Non-Participating Counsel, who do not execute the Participation Agreement and who are not deemed to have executed the Participation Agreement, shall have no right of access to the Common Benefit Work Product. However, in the event it is determined that such counsel in any fashion benefited from the Common Benefit Work Product or the administrative functions of the PSC, then all cases and claims of clients of such counsel, whether filed or not, shall be subject to the assessment described in this Order. It is deemed that the fair liquidated damages for such unauthorized use of the Common Benefit Work Product is equal to the assessment percentage(s) set by this Order. The Court will also consider an application by the PSC for payment of its fees and costs to enforce this Order with respect to any unauthorized procurement or use of the Common Benefit Work Product.

59.     Co-Lead Counsel may periodically request that attorneys who are subject to the assessment provide a list of all cases filed, regardless of jurisdiction, and a list of all claims of clients represented or in which they have a fee interest whether the case is filed or not or on a tolling agreement or not, to facilitate the PSC's ability to keep track of all cases and claims that are subject to the assessment. Further, all counsel with cases filed in or transferred to this Court, and those who sign the Participation Agreement, must comply with such a request within 30 days of the request.

[PROPOSED] ORDER ESTABLISHING A COMMON BENEFIT FEE AND EXPENSE FUND
MDL NO. 3171

## VII.    ASSESSMENTS AND PAYMENTS INTO THE ACCOUNTS

### A.    Assessment Allocation

60.    For Participating Counsel, the assessment shall be 7% for fees and 2% for costs. The 7% fee assessment is payable from the attorneys' fee portions of the "Gross Monetary Recovery," defined below (the 2% costs assessment may come from the client's portion). The assessment applies, unless otherwise ordered, to all settlements reached and judgments entered in covered cases, whether from the date this MDL was awarded or after the date of this Order. The MDL assessments represent a hold back pursuant to *In re Zyprexa Products Liability Litig.*, 467 F. Supp. 2d 256, 266 (E.D.N.Y. 2006).

### B.    Calculating the Assessment

61.    For any attorney subject to an assessment under the terms of this Order, the assessment is owed on the "Gross Monetary Recovery" on all of that attorney's cases or claims.

62.    A Gross Monetary Recovery occurs when a plaintiff agrees or has agreed—for monetary consideration—to settle, compromise, dismiss, or reduce the amount of a claim (a "Settlement") or, with or without trial, recover a judgment for monetary damages or other monetary relief, including compensatory, statutory, and/or punitive damages (a "Judgment").

63.    The Gross Monetary Recovery:

    a)    Excludes court costs that are to be paid by Defendant(s); and,

    b)    Includes the present value of any fixed and certain payments to be made in the future, such as those that come about as a result of a structured settlement of a claim.

### C.    Defendants' Obligations

64.    Defendants and their counsel shall not distribute any Settlement or Judgment proceeds to any counsel or plaintiff until after (1) Defendants' counsel notifies Plaintiffs' Co-Lead Counsel in writing of the existence of a settlement and the name of the individual plaintiff's attorney (without disclosing the amount of the settlement); (2) Plaintiffs' Co-Lead Counsel consults with the designee, if necessary, to ascertain if the attorney or his/her/their firm is a firm subject to an assessment; and (3) Plaintiffs' Co-Lead Counsel has advised Defendants' counsel in writing whether or not the individual plaintiff's attorney's cases are subject to an assessment pursuant to this Order. Any of the Defendants' counsel shall be permitted to share this information with Plaintiffs' Co-Lead Counsel, who shall otherwise keep this information confidential.

65. If Plaintiffs' Co-Lead Counsel has advised Defendants' counsel the plaintiff's attorney's case or cases are subject to an assessment, Defendants have elected to transfer the entirety of any Settlement or Judgment proceeds to an account managed by the Administrator. In order to allow the Administrator to calculate the assessment amount(s), Defendant or its designated agent will provide the Administrator with a schedule containing: (1) the name of the plaintiff(s) with the corresponding docket number and/or the name of each unfiled claimant, (2) the name of the counsel of record for each plaintiff and/or claimant, and (3) each such person's corresponding Gross Monetary Recovery. Additionally, for each unfiled claimant, Defendant or its designated agent will provide the Administrator with: (1) the state of domicile for the claimant and (2) the state(s) of incident(s) of alleged sexual assault.

66. The Administrator will calculate the assessment amount, if any, attributable to each settling plaintiff and/or unfiled claimant pursuant to the terms of this Order and report those amounts to Defendant or its designated agent. For cases subject to an assessment, the Administrator is directed to withhold the assessment from any and all amounts paid to plaintiffs and their counsel and to pay the assessment directly into the Accounts as a credit against the Settlement or Judgment. No orders of dismissal of any Plaintiff's claim, subject to this Order, shall be entered unless Administrator has verified that the assessment, where applicable, has been withheld and will be deposited into the Accounts at the same time the settlement proceeds are paid to settling counsel. If for any reason the assessment is not or has not been so withheld, the Plaintiff and his/her/their counsel are jointly responsible for paying the assessment into the Accounts promptly.

67. Upon payment of the assessment into the Accounts, Defendants, the PSC, and its individual members shall be released from any and all liability to any person, attorney, or claimant with respect to the assessment placed into the Accounts. Any person, attorney, or claimant allegedly aggrieved by an assessment pursuant to this Order shall seek recourse as against the Accounts only, provided, however, that notice and an opportunity to be heard shall be given to both the Defendants and the PSC.

68. This Order shall in no way be read to affect or otherwise encumber any Defendants' obligation to pay attorneys' fees and costs pursuant to fee-shifting statutes, if any, that may apply in this case.

69. In light of the costs this order imposes on Defendant, the Administrator will credit Defendant with its reasonable out-of-pocket cost of each wire transfer fee charged by Defendant's banking institution.

[PROPOSED] ORDER ESTABLISHING A COMMON
BENEFIT FEE AND EXPENSE FUND
MDL NO. 3171

### D.    Other Rights

70.    Nothing in this Order is intended to impair the attorney/client relationship or any contingency fee contract deemed lawful by the attorneys' respective bar rules and/or state court nor otherwise interfere with public entities' rights to, and exercise of, control in their respective cases.

## VIII.    COMMON BENEFIT WORK

### A.    Qualified Common Benefit Work Eligible for Reimbursement

71.    Pursuant to PTO 10, only Participating Counsel are eligible for reimbursement for time and efforts expended for the Common Benefit. Participating Counsel shall be eligible to seek reimbursement for time and efforts expended for Common Benefit Work if said time and efforts are:

      a)    for the common benefit;

      b)    appropriately authorized;

      c)    timely and appropriately submitted; and

      d)    reasonable.

72.    All submissions and applications for common benefit fees and/or costs must comply with the procedures, requirements, and guidelines of PTO 10. This Court retains the discretion to amend or supplement PTO 10, and this Order, as necessary and appropriate to reflect ongoing developments in the litigation.

73.    Time spent on unauthorized work will not be compensable.

74.    Duplicative work may not be approved for compensation.

75.    The provisions of PTO 10, § II(A) are incorporated herein as if set forth in their entirety.

### B.    Common Benefit Timekeeping Protocols

76.    The provisions of PTO 10, Section II(B) are incorporated herein as if set forth in their entirety.

## IX.    COMMON BENEFIT EXPENSES

### A.    Qualified Common Benefit Expenses Eligible for Reimbursement

77.    In order to be eligible for reimbursement, expenses ("Common Benefit Expenses") must meet the requirements set forth in PTO 10, § II(C), which are incorporated herein as if set forth in their entirety.

Said expenses must be for the common benefit of Plaintiffs in this MDL as a whole and must be approved by Co-Lead Counsel prior to payment.

**B.    Shared Costs Defined**

78.    The provisions of PTO 10, § II(C)(1) are incorporated herein as if set forth in their entirety.

**C.    Held Costs Defined**

79.    The provisions of PTO 10, §§ II(C)(2)-(4) are incorporated herein as if set forth in their entirety.

**D.    Common Benefit Submission of Time and Expense Protocols**

80.    The provisions of PTO 10, § II(C)(5) and § II(D) are incorporated herein as if set forth in their entirety.

**X.    FURTHER PROCEEDINGS AND CONTINUING JURISDICTION**

81.    This Order is without prejudice to such other assessments or awards of fees and costs as may be ordered by this Court under Federal Rule of Civil Procedure 23(h) or any analogous state court procedural rules, the common benefit doctrine, or that may be provided by contract between the parties to a group or global settlement, provided that any order or agreement that would alter the common benefit obligations set forth herein is also subject to the approval of this Court.

82.    The intent of this Order is to establish, secure, and supervise a fund to promote the purposes and policies of the common benefit doctrine and provide a source for equitable payment of services rendered and costs incurred for the benefit of plaintiffs.

83.    Any disputes or requests for relief from or modification of this Order will be decided by the Court in the exercise of its continuing jurisdiction over the parties, and authority and discretion under the common benefit doctrine. The terms of this Order are subject to reevaluation upon a showing of good cause at the conclusion of the MDL (or a significant portion of it).

**IT IS SO ORDERED.**

Dated: June 11, 2026

_____
THE HONORABLE RITA F. LIN

[PROPOSED] ORDER ESTABLISHING A COMMON
BENEFIT FEE AND EXPENSE FUND
MDL NO. 3171

# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: LYFT, INC. PASSENGER SEXUAL ASSAULT LITIGATION | MDL No. 3171 |
| This Document Relates to: ALL ACTIONS | |

## MDL 3171 COMMON BENEFIT PARTICIPATION AGREEMENT

**THIS AGREEMENT** is made this ____ day of _____, 20__, by and between the Plaintiffs' Co-Lead Counsel and Plaintiffs' Steering Committee appointed by the United States District Court for the Northern District of California in MDL 3171 and

_____ **[Name of the Attorney and their Law Firm Executing the Agreement on behalf of themselves and their Law Firm]** (the "Participating Counsel").

**WHEREAS**, the United States District Court for the Northern District of California (MDL 3171) has appointed Plaintiffs' Co-Lead Counsel and PSC (collectively, "PSC") to facilitate the conduct of pretrial proceedings in the federal actions relating to sexual assault/misconduct claims by passengers against the Lyft Defendants.

**WHEREAS**, the PSC in association with other attorneys working for the common benefit of plaintiffs have developed and are in the process of further developing work product and a record that will be valuable in all proceedings and benefit all plaintiffs filing cases, making claims, or seeking remedies against Lyft ("Common Benefit Work Product");

**WHEREAS**, Participating Counsel want to acquire the Common Benefit Work Product and establish a framework for an amicable, working relationship with the PSC for the mutual benefit of their clients, and for those attorneys who perform work authorized, audited, and approved as common benefit to seek common benefit compensation;

**NOW THEREFORE**, in consideration of the covenants and promises contained herein, and intending to be legally bound hereby, the parties to this Agreement agree as follows:

- 1 -

Exhibit 1 – PTO-16
26-MD-03171

## I. SCOPE OF AGREEMENT

### A. Purpose

1. This Participation Agreement is a private cooperative agreement between plaintiffs' attorneys to share Common Benefit Work Product with regard to all injuries and damages arising from claims related to passenger sexual assault/misconduct claims against the Lyft Defendants by Participating Counsel, pursuant to Pretrial Order No. 16: Establishing A Common Benefit Fee and Expense Fund ("PTO 16"), or any amendment. Plaintiffs' attorneys who execute this Participation Agreement are entitled to receive the Common Benefit Work Product created by those attorneys who have also executed or have been deemed to have executed the Participation Agreement.

2. The intent of this Participation Agreement is to establish, secure, and supervise a fund to promote the purposes and policies of the common benefit doctrine and provide a source for equitable payment of services rendered and costs incurred for the benefit of plaintiffs.

3. There is no need for an attorney who already has a case filed in or transferred to this Court or who represents a plaintiff or claimant in this MDL proceeding to sign the Participation Agreement, because they are automatically subject to PTO 10, PTO 16, and any amendments, with regard to all cases in which they have a fee interest, regardless of whether any of their other cases are filed in other jurisdictions, or not yet filed.

### B. Rights and Obligations of Participating Counsel

4. Participating Counsel who execute the Participation Agreement shall be entitled to access to the Common Benefit Work Product for use in all of the cases or claims of their clients, whether the case or claim has been filed or not, and, if filed, for use in any court in which it was filed even if not filed in this MDL, and for use of non-filed claims, including any for which a tolling agreement exists. All claims or cases of a counsel who has executed the Participation Agreement shall be assessed whether the claim or case has or had not been filed, and all claims or cases in which a counsel who has executed the Participation Agreement has a fee interest shall be assessed.

Exhibit 1 – PTO-16
26-MD-03171

5.    Co-Lead Counsel may periodically request that attorneys who are subject to the assessment provide a list of all cases filed, regardless of jurisdiction, and a list of all claims of clients represented or in which they have a fee interest whether the case is filed or not or on a tolling agreement or not, to facilitate the PSC's ability to keep track of all cases and claims that are subject to the assessment. All counsel with cases filed in or transferred to this Court, and those who sign the Participation Agreement, must comply with such a request within 30 days of the request.

## II.    AGREEMENT TO PAY AN ASSESSMENT ON GROSS RECOVERY

### A.    Assessment Amount

6.    For Participating Counsel, the assessment shall be 9% (7% for fees, 2% for costs). The 7% fee assessment is payable from the attorneys' fee portions of the "Gross Monetary Recovery," defined below (the 2% costs assessment may come from the client's portion).

### B.    Gross Monetary Recovery

7.    Subject to the terms of this Participation Agreement and the terms of PTO 10, PTO 16, and any amendments, all Plaintiffs and their attorneys who either agree or have agreed to settle, compromise, dismiss, or reduce the amount of a claim (a "Settlement") or, with or without trial, recover a judgment for monetary damages or other monetary relief, including compensatory, statutory, and/or punitive damages (a "Judgment"), with respect to claims involving Lyft passengers being sexually assaulted or subject to sexual misconduct by drivers paired on the Lyft application, including but not limited to all claims alleged in this MDL, and including such claims against Lyft, Inc., any of its affiliates, and any third-party involved with procuring or providing Lyft rides, are subject to an assessment of the Gross Monetary Recovery.

8.    The Gross Monetary Recovery: (a) excludes court costs that are to be paid by Defendant(s); and (b) includes the present value of any fixed and certain payments to be made in the future, such as those that come about as a result of a structured settlement of a claim.

### C.    Covered Claims or Cases

9.    Counsel who sign (or who are deemed to have signed) this Participation Agreement agree that the assessment shall apply to all unfiled claims or cases, tolled (if

- 3 -

Exhibit 1 – PTO-16
26-MD-03171

applicable) claims or cases, and claims or cases filed in other courts in which they have any fee interest. Covered claims or cases include all claims involving Lyft passengers being sexually assaulted or subject to sexual misconduct <u>by drivers paired on the Lyft application</u>, including but not limited to all claims alleged in the Master Long-Form Complaint (ECF No. 175), and including such claims against Lyft, Inc., any of its affiliates, and any third-party involved with procuring or providing Lyft rides.

### D.    Administration of the Fee and Expense Accounts

10.    No disbursement shall be made from the Accounts other than by Order of the Court pursuant to a petition requesting an award of fees and reimbursement of expenses (a "Petition"). No Petition shall be filed without leave of Court. No person or entity has any right to make any claim against any of the amounts held in the Accounts except to the extent the Court issues an Order directing the disbursement of any amounts to such a person or entity. The rights of any such person or entity are limited to the amount ordered by the Court to be so disbursed to that particular person or entity. The PSC has the authority to convene a Common Benefit Committee to make recommendations to the Common Benefit Special Master and the Court for awards of common benefit fees and costs. Any and all such awards require Court approval on noticed motions.

11.    The amounts held in the Accounts shall not constitute the separate property of any person or entity or be subject to garnishment or attachment for the debts of any person or entity. However, any specific amounts ordered by the Court to be disbursed to a person or entity, upon the entry of such an Order, can then be subject to garnishment or attachment, limited to the amount of the disbursement so ordered. These limitations do not preclude a person or entity from transferring, assigning, or creating a security interest in potential disbursements from the Accounts to which such person or entity may be entitled as determined by the Court, if permitted by applicable state laws and if subject to the conditions and contingencies of this Order. However, no notice of lien or security interest in potential disbursements or of a transfer or assignment of a right of potential disbursements shall be effective unless and until it is filed in this Court and served upon the Administrator.

Exhibit 1 – PTO-16
26-MD-03171

**E.    Attorney Fee Lien**

12.    With respect to each client who they represent in connection with related claims or cases that are filed or pending in any court, unfiled or subject to a tolling agreement, consistent with PTO 16, each Participating Counsel agrees to have Defendants deposit or cause to be deposited into the Accounts a percentage proportion of the gross amount recovered by each such client that is equal to the assessment amount.

13.    In the event Defendants do not deposit such funds into the Accounts, Plaintiffs and Plaintiffs' Participating Counsel are required to so inform Plaintiffs' Co-Lead Counsel, and shall deposit or cause to be deposited in the Accounts the percentage proportion of the gross amount recovered by each such client that is equal to the assessment amount.

14.    Participating Counsel, on behalf of themselves, their affiliated counsel, and their clients, hereby grant the PSC a lien upon and a security interest in any fee generated as a result of any recovery by any client who they represent in covered claim or case, to the full extent permitted by law, in order to secure payment in accordance with the provisions of this Participation Agreement.

15.    Participating Counsel will undertake all actions and execute all documents that are reasonably necessary to effectuate and perfect this lien and/or security interest.

**F.    No Individual Rights to the Funds**

16.    No party or attorney has any individual right to any of the funds from the assessment except to the extent of amounts directed to be disbursed to such person by Order of this Court. These funds will not constitute the property of any party or attorney or be subject to garnishment or attachment for the debts of any party or attorney except when and as directed to be disbursed as provided by court order to a specific person.

**G.    Court Approval**

17.    The amounts deposited in the Accounts shall be available for distribution only to attorneys who have performed professional services or incurred expenses for the common benefit. The MDL Court retains jurisdiction over the common benefit award. Each Participating Counsel

Exhibit 1 – PTO-16
26-MD-03171

who does authorized common benefit work has the right to present their claim(s) for compensation prior to any recommendation to the Court.

## III.   COMMON BENEFIT WORK

### A.   Qualified Common Benefit Work Eligible for Reimbursement

18.   Pursuant to PTO 10, only Participating Counsel are eligible for reimbursement for time and efforts expended for the Common Benefit. Participating Counsel shall be eligible to seek reimbursement for time and efforts expended for Common Benefit Work if said time and efforts are:

a.   for the common benefit;

b.   appropriately authorized;

c.   timely and appropriately submitted; and

d.   reasonable.

19.   All submissions and applications for common benefit fees and/or costs must comply with the procedures, requirements, and guidelines of PTO 10. This Court retains the discretion to amend or supplement PTO 10, and this Order, as necessary and appropriate to reflect ongoing developments in the litigation.

20.   Time spent on unauthorized work will not be compensable.

21.   Duplicative work may not be approved for compensation.

22.   The provisions of PTO 10, § II(A) are incorporated herein as if set forth in their entirety.

### B.   Common-Benefit Time Keeping Protocols

23.   The provisions of PTO 10, Section II(B) are incorporated herein as if set forth in their entirety.

## IV.   COMMON BENEFIT EXPENSES

### A.   Qualified Common Benefit Expenses Eligible for Reimbursement

24.   In order to be eligible for reimbursement, expenses ("Common Benefit Expenses") must meet the requirements set forth in PTO 10 § II(C), which are incorporated herein as if set

Exhibit 1 – PTO-16
26-MD-03171

forth in their entirety. Said expenses must be for the common benefit of Plaintiffs in this MDL as a whole and must be approved by Co-Lead Counsel prior to payment.

**B.      Shared Costs Defined**

25.      The provisions of PTO 10, § II(C)(1) are incorporated herein as if set forth in their entirety.

**C.      Held Costs Defined**

26.      The provisions of PTO 10, §§ II(C)(2)-(4) are incorporated herein as if set forth in their entirety.

**D.      Common Benefit Submission of Time and Expense Protocols**

27.      The provisions of PTO 10, § II(C)(5) and § II(D) are incorporated herein as if set forth in their entirety.

**V.      FURTHER PROCEEDINGS AND CONTINUING JURISDICTION**

28.      PTO 16 is without prejudice to such other assessments or awards of fees and costs as may be ordered by this Court under Federal Rule of Civil Procedure 23(h) or any analogous state court procedural rules, the common benefit doctrine, or that may be provided by contract between the parties to a group or global settlement, provided that any order or agreement that would alter the common benefit obligations set forth herein is also subject to the approval of this Court.

29.      If all parties to a future settlement agree that exceptional circumstances warrant a departure from the holdback obligations, or other provisions of this Order, they shall submit affidavits thereon and request appropriate relief from the Court.

30.      Any disputes or requests for relief from or modification of PTO 16 will be decided by the Court in the exercise of its continuing jurisdiction over the parties, and authority and discretion under the common benefit doctrine.

Exhibit 1 – PTO-16
26-MD-03171

**AGREEMENT TO BE BOUND**

Dated: _____, 2026                    _____

                                                        **Attorney's Name:**

_____    _____

                                                        **Firm Name**

I hereby agree to be a **Participating Counsel** and certify that I am signing this Participation Agreement voluntarily. I also certify that I have the authority and power to bind my law firm into this Participation Agreement.

**ON BEHALF OF THE PLAINTIFFS' STEERING COMMITTEE:**

Dated: _____, 2026                    _____

                                                        Rachel B. Abrams

                                                        _____

                                                        Roopal P. Luhana

                                                        _____

                                                        Aimee H. Wagstaff

                                                        *Plaintiffs' Co-Lead Counsel*

Exhibit 1 – PTO-16
26-MD-03171