[Submitting Counsel below]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: LYFT, INC. PASSENGER SEXUAL ASSAULT LITIGATION | No. 3:26-md-03171-RFL |
| This Document Relates to:<br>ALL ACTIONS | **[PROPOSED] ORDER GOVERNING LYFT'S PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS** |

### 1. PURPOSE

This Order Governing Lyft's Production of Electronically Stored Information and Hard Copy Documents ("Lyft ESI Order") will govern discovery of electronically stored information and any hard copy documents in this Litigation as a supplement to the Federal Rules of Civil Procedure and this District's Guidelines for the Discovery of Electronically Stored Information ("ESI Guidelines)[1] and Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information ("ESI Checklist")[2], and any other applicable orders and rules. Nothing in this Order is intended to limit the duty of a non-party to preserve evidence as otherwise required by law. "This Litigation" includes all actions currently in IN RE: LYFT, INC. PASSENGER SEXUAL ASSAULT LITIGATION, or hereafter added or transferred to MDL No. 3171, and all actions later remanded to their respective transferor courts.

---

[1] https://cand.uscourts.gov/sites/default/files/wp-content/uploads/forms/e-discovery-esi-guidelines/ESI_Guidelines-12-1-2015.pdf

[2] https://cand.uscourts.gov/sites/default/files/wp-content/uploads/forms/e-discovery-esi-guidelines/ESI_Checklist-12-1-2015.pdf

## 2. DEFINITIONS

a)    "And" and "or" shall be construed conjunctively or disjunctively as necessary to make their use inclusive rather than exclusive, e.g., "and" shall be construed to mean "and/or."

b)    "Defendant" or "Defendants" means the named defendants in the above-captioned matter, as well as any later added defendants.

c)    "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include Hard-Copy Documents, Electronic Documents and ESI.

d)    "Electronically stored information" or "ESI," as used herein, has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

e)    "Electronic Document or Data" means Documents or Data existing in electronic form at the time of collection, including but not limited to, e-mail, chats, or other means of electronic communications (such as instant messaging, chat messaging, app-based messaging, Slack messaging, and collaboration tool messaging), word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint files), spreadsheets (e.g., Excel), chat files (e.g., JSON), and image files (e.g., jpg) voicemails, recorded phone calls, memoranda, letters, reports, databases, and any storage media.

f)    "Hard-Copy Document" means Documents existing in paper form at the time of collection.

g)    "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is a .xls or .xslx file.

h)    "Metadata" means: (i) structured, i.e., fielded, information embedded in a native file which describes, inter alia, the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production; and (iv) information collected during the

course of collecting documents or ESI.

i)       "Attachment(s)" shall be interpreted broadly and includes, e.g., traditional email attachments and documents embedded in other documents (e.g., Excel files embedded in PowerPoint files) as well as modern attachments, pointers, internal or non-public documents linked, hyperlinked, stubbed or otherwise pointed to within or as part of other ESI (including but not limited to email, messages, comments or posts, or other documents).

j)       "Party" means any person, business organization, or legal entity that is a named plaintiff or defendant in any filed case consolidated under this MDL.

k)       "Requesting Party" means the Party requesting the production of Documents.

l)       "Producing Party" means the Party that may be producing Documents in response to the request of the Requesting Party.

n)       "Searchable Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

o)       "Media" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

p)       "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image.

q)       "Load File(s)" means electronic files provided with a production set of documents and images used to load that production set into a receiving party's document review platform and correlate its data within that platform.

r)       "Include" and "Including" shall be construed to mean "include but not be limited to" and "including, but not limited to,".

s)       "Plaintiff" refers to the named plaintiffs in the above-captioned matter, as well as any later-added plaintiffs.

t)       "Parent-child" shall be construed to mean the association between an attachment and its parent Document in a Document family.

u)       Any reference to the singular shall also be deemed to refer to the plural, and vice-

versa.

v)     "Hyperlinked Files" refers to any electronic documents or records that are contained within other ESI via a clickable or embedded hyperlink.

w)     "Family Groups and Relationship(s)" include the relationships between Parent-child documents. and the relationships between documents which contain hyperlinks to documents and those Hyperlinked Files.

x)     "AI" refers to Artificial Intelligence, including but not limited to, Gen AI, Agentic AI and the use of large language models ("LLM"s), related technologies, and applications/programs/platforms/web sites utilizing such technology, including, but not limited to Microsoft Copilot, Google Gemini, Claude Cowork, Claude Chat, ChatGPT, Harvey, etc.

**3.     COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this Litigation consistent with this Court's Guidelines for the Discovery of ESI and this Court's Rules of Professional Conduct. The Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process, including the identification, preservation, and collection of sources of potentially relevant ESI, as well as propounding reasonably particular discovery requests, establishing proportional limits on the scope of potentially relevant and discoverable ESI, while endeavoring to identify and  produce a reasonable percentage of potentially relevant and discoverable ESI, and maintaining security over the discovery in this Litigation.

Nothing in this Protocol shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any discovery demand. Nothing in this Order shall be deemed to prevent a Party from seeking the Court's intervention with respect to any issues that may arise regarding the application of this Order to a Document request issued to a Producing Party and/or any responses or objections a Producing Party may have with respect to any such request if the Parties are unable to resolve any such issues, responses, or objections without the Court's assistance. Likewise, nothing in this Order shall be deemed to prevent any other Party from opposing relief sought from the Court.

### 4.    LIAISON

The Parties will identify Discovery Liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Any Party is free to change their designated Discovery Liaison by providing written notice to the other Parties. Each Party's Discovery Liaison must: (a) be prepared to meet and confer on discovery-related matters and to participate in discovery dispute resolution; and (b) be knowledgeable about the Party's discovery efforts; or be, or have reasonable access to those who are knowledgeable about the technical aspects of discovery, including electronic document storage, organization, and format issues, and search methodology.

### 5.    PRESERVATION

The Parties' preservation obligations are set forth in PTO No. 13, Stipulated Preservation Order Entered June 4, 2026 ("Preservation Order").

### 6.    INADVERTENT PRODUCTION OF PRIVILEGED MATERIAL

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected Document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. The inadvertent production of information subject to protection by the attorney-client privilege, by the work-product, joint defense, or other similar doctrine, or by another legal privilege protecting information from discovery, as well as the protocol for logging such Documents withheld from production for privilege purposes, shall be addressed pursuant to the forthcoming Privileged Materials Order  to be issued by the Court.

### 7.    IDENTIFICATION OF CUSTODIAL AND NON-CUSTODIAL DOCUMENTS AND ESI

To the extent they have not already done so, within 7 business days of the entry of this Order, Defendant will disclose (a) the names and job titles of individuals who were placed in litigation hold; (b) the specific names of custodial and non-custodial data sources in Lyft's possession, custody, and control likely to contain potentially relevant Documents and ESI and the exact information each source includes;  (c) Lyft's specific and sourced definition of a "custodial

file" to enumerate the platform, system or other content, and dates covered as part of litigation holds; and (d) additional third parties likely to possess potentially relevant information in accordance with the Parties' conferrals thus far.

Sources of non-custodial documents include, but are not limited to, databases, file servers, SANs, NASs, email servers or platforms, web servers or platforms, online data stores such as Drive/Suite, and Google Workspace, online email systems such as Google Mail, communication or coordination platforms such as Slack, third-party-hosted Software as a Service (SaaS) platforms such as Zoho, document management systems (DMS), record management systems (RMS), content management systems (CMS), departmental/project/collaborative/shared storage spaces, e-rooms, structured data stores, application data, source code repositories, social media, source code repositories, and hard-copy document repositories. Information that serves to identify or locate such material, such as file inventories, file folders, indices, and metadata, are also included in this definition.

Sources of custodial documents and ESI include, without limitation: (i) email accounts; (ii) electronic devices (e.g., desktop or laptop computers, network home or personal file shares, local hard drives, tablets, digital cameras); (iii) any other hardware storage devices (e.g., external hard drives, memory cards, USB or thumb drives, CDs/DVDs, removable storage, removable storage media); (iv) any social media (e.g., Facebook, Instagram, LinkedIn, Twitter, MySpace, YouTube, Pinterest, or other online collaboration tools such as Google+ or Yahoo! groups); (v) any website where a Party made online postings (e.g., on a blog, message board, etc.); (vi) any cloud storage (e.g., DropBox, Microsoft Office365 Account, Google Drive/Suite, iCloud, Amazon Drive, etc.); (vii) any messaging applications (e.g. Slack, HipChat, iChat, GroupMe, WhatsApp); (viii) unstructured data (e.g., documents created by commonly used Microsoft Office programs and Google programs); (ix) structured data (e.g., information stored in structured databases like Salesforce and Basecamp); (x) backup media (e.g., data from tapes, discs, or cloud accounts); and/or other sources.

///

### 8.     KNOWN RESPONSIVE DOCUMENTS

Documents or ESI identified in a custodial or non-custodial file, or in a discrete folder or collection, that are known to a Producing Party to be responsive to a discovery request shall be collected for review without regard to whether the responsive content was located via any search methodology developed in accordance with this Order, and nothing about such review shall prevent the Producing Party from redacting or withholding and logging such documents for applicable privileges.

### 9.     DEFENDANT'S SEARCH QUERIES AND METHODOLOGIES

The Parties shall confer prior to the use of or the application, if any, of filtering technologies other than search terms followed by manual review, including filtering by file types, date ranges, transparent validation procedures and random sampling, predictive coding, TAR, AI, or other appropriate advanced technology (discussed further in Section 10). The Parties are expected to work in a cooperative, collaborative, and iterative manner. To the extent the Parties are unable to reach agreement on the application of, or procedures for, any search or filtering processes, the Parties shall raise such issues for resolution by the Court or its designee. The Parties recognize that as the litigation evolves, there may also be a need to supplement earlier agreed methods or search terms to enhance or improve the identification of potentially relevant ESI.

If the Defendant is identifying responsive ESI, which is not already known to be responsive, using search terms, the Parties will meet and confer about search terms in English and any other languages used in the Defendant's documents. Before implementing search terms, Defendant will disclose information and meet and confer within fourteen (14) days of the Lyft ESI Order being entered regarding the search platform to be used, a list of search terms in the exact forms that they will be applied (i.e., as adapted to the operators and syntax of the search platform), a list of relevant English and foreign language company terminology (or equivalent), all relevant project and code names, code words, acronyms, abbreviations, nicknames, significant or common misspellings of the listed search terms in the collection to be searched, any date filters, or other culling methods.

At the same time Defendant discloses the search terms, unless Plaintiffs agree to waive or

delay disclosure, Defendant shall disclose: 1) the number of documents with hits for each term; 2) the number of unique documents, i.e., documents which do not have hits for any other, for each term; 3) the number of family members, including the documents with hits, of the documents with hits for each term; 4) the number of documents being searched; 5) the total number of unique documents with search term hits; 6) the total number of unique documents with search term hits with their families; and 7) the total number of unique documents without search terms hits.

Within 7 days of Defendant disclosing its search terms and related information, Plaintiffs may propose additional terms or culling parameters. At the same time the Plaintiffs disclose their proposals, they may request that the Defendant provide hit reports for any modified or new terms proposed by Plaintiffs, and Defendant shall promptly respond with that information but may also provide other information. The Parties shall confer within 14 days after Plaintiffs' proposal to resolve any disputes about the search terms. The Parties may stipulate to extend one or more of these deadlines.

Use of search terms will be validated post-review as discussed in Section 11. Nothing in this ESI Order may be construed or interpreted as precluding Lyft from performing a review to determine if documents captured by search terms are in fact responsive to the Plaintiffs' discovery requests. Similarly, nothing in this ESI Order may be construed or interpreted as precluding Lyft from performing, by any means, a privilege review of documents determined to be responsive. Further, nothing in this ESI Order requires the production of documents captured by any search term that are not relevant and responsive to the Requesting Party's request, privileged, or otherwise protected from disclosure.

**10.     USE OF AI AND/OR TAR BY DEFENDANT**

a. Generally speaking, TAR refers to technology-assisted review that uses machine learning algorithms to aid in the review of documents for relevance to a legal case, while AI refers to generative AI that automatically summarizes documents, identifies key themes in data sets, or enhances document review and categorization. In the event that Defendant decides to use or apply TAR or AI to assist in the collection, review or production of records, within 7 days of Defendant's decision and before Defendant has begun using TAR or AI to assist, Defendant shall

disclose its intended use of such technolog(ies). Defendant's disclosure shall include:

    i.    the AI or TAR application/program/platform ("platform(s)");

    ii.    the name of any vendor(s) involved in the proposed AI or TAR process;

    iii.    documentation of the AI or TAR platform(s);

    iv.    specification of the documents to which AI or TAR will be applied;

    v.    specification of the documents excluded from AI or TAR and the reasons for such exclusion;

    vi.    specification of the documents and training sets used to train the platform(s);

    vii.    specification of the AI and/or TAR workflow, including all steps therein;

    viii.    specification of the training process, including all prompts, templates, instruction sets, or parameter configurations used;

    ix.    specification of validation and validation criteria; and

    x.    specification of how recall and prevalence will be estimated.

    b.    At a minimum, validation will include appropriately sized random samples taken from (i) the Documents in the collection that were classified as responsive, and (ii) the Documents in the collection that were classified as non-responsive by the process. All non-privileged documents in both samples, along with identification of the sample from which each Document was drawn, will be made available to Plaintiffs' counsel to review, with all disputes on the responsiveness of individual Documents in the samples to be the subject of meet and confers between the Parties and any remaining disputes to be raised to the Court for resolution

    c.    Defendant shall also provide any additional information necessary for Plaintiffs to fully and adequately evaluate the proposal and the underlying technology.

    d.    After this disclosure, Plaintiffs may request any additional information required for Plaintiff to understand Defendant's proposed use of AI or TAR and the underlying technology and no such request will be unreasonably refused;

    e.    The Parties shall use the provisions of the Uber MDL ESI Order that address TAR as a starting point to guide the use of AI and TAR in this MDL, though the parties may propose and seek modifications or additions as necessary. The Parties shall meet and

confer to address any issues raised by Defendant's proposed use of AI and/or TAR. Following the conclusion of the Parties' meet and confer efforts, any unresolved dispute(s) shall be addressed through the process set forth in Pretrial Order 18, unless the parties stipulate to an alternative briefing process.

f.  Within one week of the date this ESI Order issues, the Parties shall meet and confer regarding a deadline for Lyft to decide whether it will use TAR and/or AI to assist in the collection, review, or production of ESI, and within two weeks from the date this ESI Order issues, the Parties shall file a stipulation indicating a deadline for Lyft to make its determination.

## 11.    END-TO-END VALIDATION OF DEFENDANT'S SEARCH METHODOLOGY AND RESULTS

The Parties shall participate in an iterative and cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate validation procedures and random sampling of Defendant's Documents (both of relevant and non-relevant sets and of the entire collection against which search terms were run or TAR or AI or other identification or classification methodology was used), in order to establish that an appropriate level of end-to-end recall (the percentage of responsive Documents in the initial collection before any search terms or TAR or AI or manual review was applied which were classified as responsive after Defendant's search, TAR, AI and review processes) has been achieved and ensure that the Defendant's search, classification and review methodology was effective and that a reasonable percentage of responsive ESI was identified as responsive.

## 12.    UNSEARCHABLE DOCUMENTS

Documents which are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, video, certain spreadsheets, certain hard copy documents, certain documents from noncustodial sources, or certain foreign language documents where the Parties do not have suitable search terms in such language, must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text. Prior to the production of such unsearchable items, the Producing Party may

conduct a page-by-page review for responsiveness, confidentiality, privilege, and other protections.

### 13.    REASSESSMENT

After the completion of the search methodology meet and confer sessions and/or after completion of the selected search process itself, a Producing Party, a Receiving Party, or the Court may perceive the need to reassess a search methodology and/or validation process. In all such circumstances, the Parties will meet and confer to address any issues in a reasonable and timely manner; and the time, cost, and/or other resources expended in connection with ineffective methodologies and/or processes shall be deemed irrelevant to the issues of reasonableness and proportionality for additional efforts required.

### 14.    SYSTEM FILES

Each Party will use its best efforts to filter out common system files and application executable files using the national software reference library ("NSRL") NIST hash set list. The Parties shall meet and confer on methods for excluding any other non-substantive files and folders that are reasonably identified as system files and not likely to contain user-created files.

### 15.    DEDUPLICATION

Defendants shall make reasonable efforts to globally de-duplicate exact duplicate Documents within the ESI data set across all custodians at the family level. Documents should be de-duplicated at the family level using MD5 hash values, or SHA-1 hash values, or the SourceHash value generated by Google for Google Drive documents. "Exact duplicate" shall mean bit-for-bit identity of the Document content with exact Hash Value matches. Parties shall disclose the methodology, e.g., industry standard program (including any variable parameters), being used to calculate the hash values for individual emails and email families. Any such methodology must ensure that an email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of any otherwise identical email that does not include content in the "BCC" or other blind copy field. Emails shall be deduplicated at the family level, and standalone documents shall not be deduplicated against attachments. The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication

will be populated in the "CUSTODIANS ALL" metadata field, separated by semi-colons, in addition to a separate field of data identifying the custodian whose Document is produced; such de-duplicated Documents shall be deemed produced from the custodial files of each such identified custodian for all purposes in this litigation, including for use at deposition and trial. The original file paths of a Document prior to deduplication will be populated in the "ALLFILEPATHS" metadata field, separated by semicolons, in the order corresponding to the order of names in "CUSTODIANS ALL". Hard-Copy Documents shall not be eliminated as duplicates of ESI.

### 16.     NO EMAIL THREADING

No email may be withheld from production or not logged for privilege because it is included in whole or in part in a more inclusive email, although Parties may use email threading for their own internal review and other internal processes.

### 17.     PRODUCTION FORMATS

Defendant agrees to produce documents and data in the formats described in Appendix 1 to this ESI Order. If particular Documents or categories of Documents identified in response to document requests warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents.  This includes documents that may appear a certain way during the normal course of business than they appear when exported from a particular source (i.e. web based). Defendant further agrees not to degrade the searchability of Documents as part of the Document production process. The Parties agree that the production and production format of social media is not covered by this agreement and to meet and confer on the production and production format, including metadata, for social media. Google file types, e.g., Google docs, sheets and slides, shall be produced as their Microsoft equivalents, i.e. Google docs files shall be produced as Microsoft Word files and Google sheets shall be produced as Microsoft Excel Files, etc.

### 18.     CLOUD STORED DOCUMENTS

A.     <u>Metadata Preserved.</u>

Defendant shall preserve and produce (including, if necessary, as custom fields) metadata

available with respect to all cloud-stored documents, including the metadata relationship between emails with links to cloud-stored documents and all metadata output by Google Vault when exporting documents. Metadata exported from Google Vault pertaining to each document shall be preserved and produced as metadata for the same document within the load file of any production containing any such documents. Metadata fields to be produced are listed at Appendix 2.

B.      Preservation of Relationships Between Communications and Linked Documents

Producing Party shall use best efforts to maintain and preserve the relationship between any email,  message, thread message, or document and any cloud-hosted document hyperlinked, stubbed, or referenced by URL within the email or message. For each email, message, or hyperlink containing a hyperlink or URL reference to a cloud-stored document (e.g., Google Drive, SharePoint, Dropbox, OneDrive, or similar platforms):

a. The metadata for that email or message shall include at least the following:

- The URL or hyperlink as it appeared in the original communication;
- The Google Drive DocumentID or equivalent unique identifier for the linked document;
- The Beginning Bates numbers of the linked document (if produced);
- A field indicating whether the linked document was successfully collected and produced ("LinkedDocProduced: Yes/No").

b. Where a linked document has been produced, the LINKBEGBATES field shall contain the Bates number of the first page of the linked document, enabling the Receiving Party to locate the associated document.

C.      Contemporaneous Versions of Hyperlinked/URL-Referenced Documents.

Defendant shall endeavor to produce the contemporaneous version of URL-referenced cloud-stored documents referenced in emails. If no method is viable, Defendant shall provide the current version, if it exists, of any document referenced by URL or hyperlink.

Plaintiffs may identify up to 500 hyperlinks or URLs for which they seek production of the contemporaneous version even where automated methods were unsuccessful. For each such identified hyperlink, Defendant shall use reasonable efforts to manually determine and produce the

contemporaneous version within 30 days of the request, or explain in writing why the contemporaneous version cannot be determined or produced.

This cap may be increased upon motion showing good cause, including a demonstration that a substantial number of the documents at issue are likely to have been materially modified after the referring communication was sent.

Nothing in this Section exempts Defendant from its obligation to preserve (as set forth in the Stipulated ESI Preservation Order [PTO No. 13]) the full edit and revision history of any document referenced by URL or hyperlink, regardless of whether such history is produced. Upon request, Defendant shall produce the edit/revision history for any produced document.

### 19.  PLAINTIFFS' PRODUCTION OF ESI AND CASE SPECIFIC DOCUMENTS

This order does not apply to the identification, review, classification, production, and production format of Plaintiff's documents and ESI, including those to be produced with Plaintiff's Fact Sheet (PFS) as those documents shall be the subject of a separate ESI protocol. This provision shall not limit any Plaintiff's obligation to preserve or produce discovery that the Court or Federal Rules of Civil Procedure may require before being selected for trial. No other provision of the ESI Order will apply to Plaintiffs but for the terms set forth herein. Nothing herein shall limit Defendant's rights to seek discovery from Plaintiffs.

### 20.  MISCELLANEOUS PROVISIONS

a)  <u>Translations Of Produced Materials</u>. The Producing Party has no obligation to create a translation of the Documents or any portion thereof. For any foreign-language documents responsive to document requests that a Party reasonably knows as the result of a reasonable investigation have been translated into the English language using human translators or through machine translation in the ordinary course of business or for its own purposes, except to the extent such translation is protected by attorney-client or work-product privileges, the Producing Party shall produce the translation of the original document with the original. The Parties will meet and confer as necessary concerning procedures

for using translations at depositions and at trial. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

b) <u>Third-Party Documents</u>. A Party that issues a Non-Party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that (1) the subpoenaed Non-Party should produce Documents in response to the subpoena to all Parties; and (2) the Parties to this Litigation have requested that Third Parties produce Documents in accordance with the specifications set forth herein. If the subpoenaed Non-Party produces Documents to the Issuing Party but does not produce those Documents to other Parties, the Issuing Party shall produce such Documents to those other Parties within 14 days of receiving the Documents, except where the Documents are to be used in a deposition, in which case the Issuing Party shall produce such Documents to all other Parties no later than three (3) days prior to the deposition, or as soon as reasonably practicable if such production occurs thereafter. Nothing in this Order is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or Third Parties to object to a subpoena. If the Non-Party production is not Bates-stamped, the Parties will meet and confer to agree upon a format for designating the documents with a unique Bates Number prefix.

c) <u>Lost, Destroyed, or Irretrievable ESI</u>. If a Producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Producing Party shall explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, whether any backup or copy of such original responsive ESI exists, and take reasonable steps to restore or replace it through additional discovery.

d) <u>Documents Produced by Parties – Presumption of Authenticity</u>. In order to

reduce the number of requests for admission, this Order establishes a rebuttable presumption that  documents produced by the Parties are authentic, if said documents were either created or authored by the producing Party, or any of its employees, agents or contractors, so long as the employees', agents', or contractors' work was performed in connection with a project or assignment sponsored by the producing Party. No further evidence to establish authenticity need be provided. Nothing in this paragraph shall be deemed to waive any other evidentiary objection a party may have, including but not limited to hearsay, foundation/personal knowledge, or relevance.

e)    Re-productions. Notwithstanding any provisions to the contrary, re-production of discrete sets of documents from another litigation, arbitration, government inquiry, or other matter may be re-produced in the same form as originally produced in the other matter. However, metadata produced with those productions shall include a field that describes the litigation in which the documents were previously produced. Any privilege logs previously produced shall be produced in this MDL contemporaneously with the re-produced documents.

f)    Protective Order. Documents produced by the Parties are subject to the terms of the Stipulated Protective Order [PTO No. 12] entered in this Litigation. The Parties agree to meet and confer regarding any further stipulated protective order to govern the production of content a Party believes in good faith requires special protections.

g)    Privilege Logs. The Parties are currently negotiating a separate order to govern the Parties' privilege logs.

h)    Production Log. With each production of documents, the Producing Party shall produce a log that contains the following information: (i) production volume number; (ii) date of the production; (iii) bates range for the production; (iv) sources of information from which the documents are being produced (e.g.,

names of custodians or noncustodial sources); and (v) other relevant information about the production (i.e., whether the production is an overlay file for a previous production). The log should be supplemented with each production such that each version contains all previous productions on the log along with the new production information.

i)    Modification. This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

j)    Good Faith. The Parties will act in good faith as required by law and use these procedures to identify and reduce the potential for disputes.

k)    Continuing Obligations. The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as reasonably necessary and appropriate. This Order does not address or resolve any objections to the Parties' respective discovery requests.

l)    Reservation of Rights. Nothing in this ESI Order may be construed or interpreted to  waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI, or independently move for an appropriate protective order pursuant to the Federal Rules of Civil Procedure. Nothing in this Order shall be deemed to be a waiver of any Party's right to reasonably seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed to search terms, techniques, or tools (including any proposed as supplements).

m.)    Materials produced pursuant to this protocol, along with all associated production passwords, should be sent

to data@ilsteam.com and  LyftMDLdiscovery@chaffinluhana.com

Dated: July 22, 2026

Respectfully submitted,

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

Aimee Wagstaff
**WAGSTAFF LAW FIRM**
940 N. Lincoln Street
Denver, CO 80203
Telephone: (720) 255-7623
awagstaff@wagstafflawfirm.com

*Co-Lead Counsel for Plaintiffs*

By: */s/ Nadine S. Kohane*
Kristen L. Richer (SBN 315883)
**BARNES & THORNBURG LLP**
2029 Century Park East, Ste. 300
Los Angeles, CA 90067
Telephone: (310) 284-3880
Facsimile: (310) 284-3894
kricher@btlaw.com

*Defense Liaison Counsel and
Counsel for Defendant Lyft, Inc.*

Nadine S. Kohane (admitted pro hac vice)
**BARNES & THORNBURG LLP**
390 Madison Ave., 12th Floor
New York, NY 10017
Telephone: (646) 746-2000
Facsimile: (646) 746-2001
nkohane@btlaw.com

Beth A. Stewart (admitted pro hac vice)
David Randall J. Riskin (admitted pro hac vice)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
bstewart@wc.com
driskin@wc.com

*Counsel for Defendant Lyft, Inc.*

IT IS ORDERED that the foregoing Order is approved.


DATED:

_____
                Hon. Lisa J. Cisneros

## APPENDIX 1: PRODUCTION FORMAT

1.     Production Components. Except as otherwise provided below, ESI must be produced in accordance with the following specifications:

    a) an ASCII delimited data file (.DAT) using standard delimiters;

    b) an image load file (.OPT) that can be loaded into commercially acceptable production software (e.g. Concordance);

    c) single page black-and-white TIFF or color JPEG images, or native files with single page placeholder TIFF images, depending on the applicable production format for each type of file;

    d) and document level .TXT files for all documents containing extracted full text or OCR text.

    e) Family groups and relationships (be that email, messaging applications, or otherwise) will be maintained in production. Attachments (as defined by this ESI Protocol) should be consecutively produced with their parent. Objects, documents or files embedded in documents, such as OLE embedded objects (embedded MS Office files, etc.), or images, etc., embedded in RTF files, shall be extracted as separate files and treated as attachments to the parent document. Chats from programs like Slack and HipChat should be linked by channel or private message.

    f)     If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2.     Production Media and Access Controls. Productions must be encrypted and produced through secure electronic means, such as secure file sharing methods (e.g. FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media must identify a production number corresponding to the production volume (e.g., "VOL001"). Each piece of Production Media must also identify: (a) the case caption; (b) the following label: "This media contains material subject to Court Ordered security measures"; (c) the Producing Party's name; (d) the production date; (e) the Bates Number range of the materials

contained on the Production Media. Nothing in this ESI Order will preclude or impair any and all protections provided to the Parties by any Protective Order(s) agreed and entered into by the Parties. Parties will use their best efforts to avoid the unnecessary copying or transmittal of produced documents. If questions arise, the Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

3.    Data Load Files/Image Load Files. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates Numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files must not vary in format or structure within a production, or from one production to another except by agreement of the Parties.

4.    Metadata Fields. Defendant shall use methods of collection and processing that preserve the integrity of document metadata, and of parent-child and family group relationships such as the association between attachments and parent documents, or between embedded documents and their parents, or between documents, including, but not limited to, emails (e.g., Outlook, Gmail) or messaging or communication posts (e.g., Slack, Teams, Google Hangouts, Google Chat), with document stubs or links or pointers to internal or non-public (e.g., Google Workspace, Zendesk) documents and those stubbed or internal or non-public documents so linked. Documents containing hidden URLs, e.g., an email containing a link where the text of the link is not the URL (for example, a link with the displayed text "Please review this article" where the URL of the link, e.g., https://somesite.com/somearticle.html/" is not itself the display text of the link) shall be processed such that all hidden URLs are included in the extracted text.

The metadata fields detailed in Appendix 2 should be produced for each Document to the extent that such information is available or, in the case of metadata created during processing such

as Bates numbers created at the time of collection and processing, except that if a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log.

5.    TIFFs. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. If the receiving party is not satisfied with the quality of TIFFs for particular images, it may request the producing party to produce those images in native format. In addition, the Parties shall take reasonable efforts to process word processing documents (e.g., MS Word) with track changes and/or comments unhidden on the TIFF image.

6.    Bates Numbering. Each TIFF image must be named according to a unique corresponding Bates number sequential within a given document and across the production sets along with a   confidentiality designation. The Producing Party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. The Bates number must not obscure any part of the underlying image.  If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has degraded the quality of the original, the Producing Party shall provide a higher quality TIFF image or the native or original file.

6.    Color. Any non-imaged color documents for which color makes the document more legible or intelligible shall be produced in color, as single-page, 300 dpi JPG images with JPG compression and a high quality setting as to not degrade the original image. Defendant shall comply with reasonable requests by Plaintiffs to determine whether a produced black-and-white TIFF's native or hardcopy original version contains color and to provide replacement color images for documents originally produced in black and white. A Party making such a request shall make the request by individual Bates number(s) and shall limit requests made pursuant to this paragraph to a reasonable number of documents.

7.      Text Files. A single text file must be provided for each document.  The text file name shall be the same as the Bates number of the first page of the document with the document extension "txt." Suffixed.  File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document requires redaction and is not a spreadsheet, is an image file, or is any other native electronically filed that does not contain text to extract (e.g., non-searchable PDFs). In these instances, and in the case of imaged hard-copy documents, a text file shall be created using OCR and shall be produced in lieu of extracted text. Text shall be provided in UTF-8 format. Extracted text shall be generated with commercially acceptable technology set to include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden and very hidden worksheets, slides, columns and rows, as well as all URLs. When possible, the text of native files should be extracted directly from the native file. Parties will OCR foreign language documents using the appropriate setting for those languages. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition ("OCR") should be used with the highest quality setting during processing for all scanned, hard copy documents, and for documents with redactions other than Excel files and other spreadsheets which shall be redacted in native format. Text extracted from emails should include the following header information where available: (1) the individuals to whom the communication was directed ("To"), (2) the author of the email communication ("From"), (3) who was copied and blind copied on such email ("CC" and "BCC"), (4) the subject line of the email ("RE" or "Subject"), and (5) the date and time of the email. Text extracted from emails and other documents should also be generated with commercially acceptable technology set to include the text of any URLs or links, e.g., if an email contains a link like "Please review these rules" where "these rules" is a URL to a destination such as "https://www.cand.uscourts.gov/notices/newnotice- proposed-modifications-to-civil-local-rules/", then the extracted text must include the URL as well as the linked text "these rules."

8.      Native Files. Spreadsheets (e.g. MS Excel), unredacted word processing documents, unredacted presentations (e.g. Microsoft PowerPoint), PDFs, audio, video and

multimedia files, and any documents which contain hyperlinks where the source URL of the hyperlinks is not included in the extracted text, will be produced in native format. The Parties will meet and confer on the production of other file types, such as proprietary files, etc. Native files will be produced with a link in the NATIVELINK field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in Appendix 2. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file. Where redaction makes production of native-format files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production, but spreadsheets shall presumptively be redacted in native, and presentations presumptively redacted in image form, in these cases without the need for further conferring.

9.    Production Format for Hard Copy Documents. Documents that exist in hardcopy will be scanned to *.tiff image format and produced in accordance with the specifications set forth on Appendix 2. Hard copy documents that are not text-searchable shall be made searchable by OCR prior to production. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized[3]). In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their efforts to unitize the documents correctly. If relevant documents are maintained in a file, folder, envelope, binder, notebook or similar container used to store documents, all contents therein shall be reviewed for production and privilege. Document pages which have affixed notes, such as Post-it notes, shall be imaged with and without the note attached.

---

[3] Logical Unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as documents. Such cues can be consecutive page numbering, report titles, similar headers and footers, and other logical indicators.

10.     Confidentiality Designation. All images will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order entered in this Litigation. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

11.     Bates Numbering. Bates numbering should be a consistent length across the production, contain no special characters, and be numerically sequential within a given document. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder. Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached. In addition, wherever possible, each image will have its assigned Bates number electronically "burned" onto the image.

12.     Databases and Other Data. The Parties shall meet and confer regarding the production and format and scope of relevant structured data or aggregated or threaded data source or otherwise maintained by an application (e.g., Microsoft Teams, Slack, Microsoft Access, SharePoint, Oracle, Salesforce, ACT!, or any other messaging or proprietary databases or services) in order to ensure that any information produced is reasonably usable by the Receiving Party and that its production does not impose an undue burden on the Producing Party. The Parties will cooperate in the exchange of sufficient information concerning such databases to facilitate discussions on the production of responsive information, including available data fields/objects and schema. To the extent a Party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware dependent, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals.

13.     ESI in Collaboration, Social Media, or Proprietary Platforms or Applications. The Parties will meet and confer to address the deduplication, production, and production format of any responsive data contained in collaboration, social media, or proprietary platforms or applications. The Parties will cooperate in the exchange of information concerning such data

sources to facilitate discussions on productions and production formats. If the Parties cannot reach agreement, the matter will be decided by the Court or its designee.

14.    Embedded Objects. OLE embedded objects (embedded MS Office files, etc.) shall be extracted as separate files and treated as attachments to the parent document. Images embedded in emails shall not be produced separately. The Parties agree non-substantive embedded objects, including, but not limited to, logos, icons, emoticons, and footers need not be produced as separate documents by Defendant (i.e., such embedded objects will be produced within the document itself, rather than as separate documents). Embedded files, except for images and non-substantive embedded objects (including but not limited to, logos, icons, emoticons), are to be produced as family groups. Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

15.    Production of Family Groups and Relationships. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged,  and no such member shall be withheld from production as a duplicate.

16.    Dynamic Fields. Documents with dynamic fields for file names, dates, and times will be imaged to show the field code (e.g., "[FILENAME]") where possible, rather than the values for such fields existing at the time the file is processed.

17.    Time Zone. All provided metadata pertaining to dates and times will be standardized to UTC.

18.    Redactions. Other than as permitted by Privilege Order entered in this Action, no redactions for relevance may be made within a produced document or ESI item. Any redactions shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the type of the redaction, and a metadata field shall indicate that the document contains redactions and the type of the redaction (e.g., "Privacy" or "Privilege"). Where a responsive document contains both redacted and non-redacted content, the Parties shall produce the non-redacted portions of the document and the OCR text corresponding to the non-redacted portions.

a) Spreadsheets. Spreadsheet files requiring redaction, including without limitation Microsoft Excel files, will be redacted and produced natively.

b) Other Documents. All images of redacted native files shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-entered data which are visible in any view of the document in its native application. Where possible, any occurrences of date/time auto-field items, including in headers and footers, will be removed and replaced with the term AUTODATE to prevent the current date from being printed. Email header information (e.g. date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the Parties' obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the image is not reasonably usable.

c) Color. Redacted versions of Documents that would have been produced in color in their un-redacted form shall be produced in color as detailed herein.

20. Exception Files. The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). The Parties will meet and confer regarding procedures that will be used to identify, access, and process Exception Files. In the event that the Parties cannot reach agreement on the handling of Exception Files through the meet and confer process, the matter may be submitted to the Court for determination.

21. Mobile and Handheld Device Documents and Data. If responsive and unique data that can reasonably be extracted and produced in the formats described herein is identified on a mobile or handheld device, that data shall be produced in accordance with the generic provisions of this protocol. To the extent that responsive data identified on a mobile or handheld device is not susceptible to normal production protocols, the Parties will meet and confer to address the identification, production, and production format of any responsive documents and data contained

on any mobile or handheld device.

21.    Parent-Child Relationships. Parent-child relationships that have been maintained in the ordinary course of business shall be preserved for both ESI and hard copy Documents. For example, for electronic production of a hard copy folder with Documents contained in the folder, the cover/title of the folder shall be produced first, with all contents of the folder in sequential Document order behind the containing folder. For email families, the parent-child relationships (the association between emails and attachments) should be preserved, i.e., email attachments should be consecutively produced with the parent email record.

22.    Encrypted or Password-Protected ESI. For any ESI that is produced in encrypted format or is password-protected, the Producing Party will provide the propounding party a means to gain access to those native files (for example, by supplying passwords.)

## APPENDIX 2 – METADATA FIELDS

| Field Name | Field Description |
| --- | --- |
| PRODBEGBATES | Beginning Bates number for a particular document as stamped on the first production image for that document |
| PRODENDBATES | Ending Bates number as stamped on the last production image for a particular document |
| PRODBEGATTACH | First production Bates number of the first document in a family |
| PRODENDATTACH | Last production Bates number of the last document in a family |
| ATTACHCOUNT | Number of attachments to an e-mail or embedded parent, as generated by commercially available discovery processing tools. |
| PRODVOL | Production volume |
| CUSTODIANS_ALL / CUSTODIAN | List of all custodians associated with Document, i.e., "Custodian" + "Other Custodian" values delimited by semicolon. |
| ALLFILEPATHS | List of all original file/path of the locations where the item was located at the time of collection delimited by semi-colon. This should include location, and, for edocuments and e-attachments, file name, and file extension. Folder names and path should be included, and, for emails and attachments collected from a container such as a .pst, the full folder path within the container. Any container names should be included in the path. |
| CONFIDENTIALITY DESIGNATION | Confidentiality designation assigned to the document consistent with the Stipulated Protective Order governing this Litigation |
| NATIVELINK | Native File Link (Native Files only) |
| TEXTLINK | Path to extracted text/OCR file for the Document. |
| HASH | MD5 hash value of the document |
| DOCUMENT TYPE | Descriptor for the type of document: "Edocument" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; "Physical" for hard copy physical documents that have been scanned and converted to an electronic image; and "Messaging Application" for all messages related to Messaging Applications/Chats including Slack, HipChat, |

| Field Name | Field Description |
| --- | --- |
|  | WhatsApp, Google Chat, and GroupMe. |
| DOCAUTHOR | Any value populated in the Author field of the document properties |
| DATECREATED | Date the document was created according to filesystem information (format: MM/DD/YYYY) |
| DATELASTMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) |
| LAST MODIFIED BY | Last person who modified (saved) a document, as generated by commercially available discovery processing tools. |
| COMMENTS | Y if a document with comments, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| TRACK CHANGES | Y if a document with track changes value, otherwise N or empty, if available separately from the HASHIDDENDATA flag |
| HASHIDDENDATA | Y if a document with hidden content value, otherwise N or empty |
| FILENAME | Filename of an electronic document |
| DOCTITLE | Any value populated in the Title field of the document properties |
| FILEEXT | File extension of document pulled from the document properties |
| FROM | The sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATERECEIVED | Date email was received (format: MM/DD/YYYY) |
| TIMERECEIVED | Time email was received (format: HH:MM) |
| DATESENT | Date email was sent (format: MM/DD/YYYY ) |
| TIMESENT | Time email was sent (format: HH:MM ) |
| TIMEZONE | The timezone used to process the document |
| EMAILSUBJECT | Subject line of email pulled from the document properties |
| REDACTION TYPE | General category of redaction reason as agreed to by the parties. For example, if agreed, "Privilege" (e.g., attorney-client, work product), "Privacy" (e.g., PII, PHI, personal financial information), or "Source |

| Field Name | Field Description |
|---|---|
| | Code." If more than one, separate reasons by semicolons. |
| REDACTIONS | Indicate Yes/No if document redacted, or withheld |
| PGCOUNT | Number of pages in the document |
| FILEPATH | Original file/path of the location where the item was located at the time of collection, where applicable. This should include location, and, for edocuments and eattachments, file name, and file extension. Folder names and path should be included, and, for emails and attachments collected from a container such as a .pst, the full folder path within the container. Any container names should be included in the path. |
| LINKBEGBATES | Beginning Bates number of the linked/hyperlinked document(s) referenced in the parent email or message |
| LinkedDriveDocumentIDs | The Google Drive DocumentID(s) (or equivalent unique identifier) for any document(s) referenced by URL or hyperlink in the parent document |
| DriveUrl | The URL or hyperlink as it appeared in the original document |
| LinkedDocProduced | Indicates whether the linked document was successfully produced (Yes/No) |
| ContemporaneousVersion | Indicates whether the produced version is the version contemporaneous with the referring communication (Yes/No/Unknown) |
| VersionDate | For documents with multiple versions, the date of the specific version produced |
| HasMultipleVersions | Indicates whether the source document had multiple versions in its edit history (Yes/No) |
| Collaborators | Accounts and groups with direct permission to edit the file or add comments |
| PARENTMSGID | Where the item is an email which is a REPLY or FORWARD, the ConversationID of the original email which was REPLIED to or FORWARDED |
| CONVERSATIONID | Email thread identifier |
| THREADID | ThreadID for non-email threaded communications |
| DocID | Document ID obtained from Google Vault metadata at time of document collection. |
| SORTDATE (mm/dd/yyyy hh:mm:ss AM) | Date of the parent e-mail or document |
| #DateFirstMessageSent | The timestamp for when the first message in a conversation was sent (Google Chat) |

| Field Name | Field Description |
| --- | --- |
| #DateLastMessageSent | The timestamp for when the last message in a conversation was sent (Google Chat) |
| #DateFirstMessageReceived | The timestamp for when the first message in a conversation was received (Google Chat) |
| #DateLastMessageReceived | The timestamp for when the last message in a conversation was received (Google Chat) |
| RoomID | The space, group chat, or DM identifier that the message belongs to. |
| Participants | The email addresses of all users who participated in the conversation. |
| RoomName | The value of the space, Group Chat, list of accounts that participated. |
| ConversationType | The message type. |

The following additional seven metadata fields are specific to Slack data:

| Field Name | Field Description |
| --- | --- |
| File Creation | Timestamp of first message in the conversation export |
| File Last Modified | Timestamp of last message in the conversation export file. |
| Workspace/Team Name | Human-readable name of the Slack workspace (team). |
| Conversation ID | Unique identified assigned to a Slack conversation (public channel, private channel, DM, MPIM, or huddle). |
| Conversation Name | Human-readable name of a Slack conversation (channel name) or identified associated with the conversation. |
| Conversation Type | Indicates the type of conversation, such as public channel, private channel, direct message (DM), multi-person direct message (MPIM), or huddle. |
| Author | User or bot that created the message, represented by the user field in the message event. |

The following additional eleven metadata fields are also specific to Slack data.  At the time of this submission, the feasibility of their inclusion is being investigated and subject to meet and confer.  A subsequent stipulation or Order will address which of these fields are to be included in Defendant's productions:

| Field Name | Field Description |
| --- | --- |
| Message ID | Unique identifier for a Slack message, represented by the message timestamp (ts). |

| Field Name | Field Description |
|---|---|
| Reactions | Emoji reactions associated with a message, including reaction name, count, and reacting users. |
| Room Created By | User who initiated the Slack Huddle. Slack states that huddle metadata includes who started the huddle. |
| Room Start Date | Timestamp indicating when the huddle began or when participants first joined. |
| Room End Date | Timestamp indicating when the huddle concluded. |
| Room Participant History | List or history of participants and when they joined or left the huddle. |
| Permalink | Permanent URL that links directly to a Slack message or conversation. |
| Room ID | Unique identifier associated with a Slack Huddle or huddle conversation. Slack's Conversation Object includes huddle conversation types but does not explicitly define a field called "Room ID." |
| Was Rejected | Boolean indicating whether a huddle invitation was rejected. Slack's Conversation Object includes huddle-related status fields, although this exact field name is not separately documented. |
| Was Missed | Boolean indicating whether a huddle invitation was missed. Slack's Conversation Object includes huddle-related status fields, although this exact field name is not separately documented. |
| Was Accepted | Boolean indicating whether a huddle invitation was accepted. Slack's Conversation Object includes huddle-related status fields, although this exact field name is not separately documented. |

## SIGNATURE ATTESTATION

I hereby attest that I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 4-1(i)(3), I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: July 22, 2026                    Respectfully submitted,

**PEIFFER WOLF CARR KANE CONWAY & WISE LLP**

By: */s/ Tiffany Ellis*
Tiffany Ellis
Counsel for Plaintiffs