*[Submitting Counsel Below]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: LYFT, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | Case No. 3:26-MD-03171-RFL<br><br>**JOINT CASE MANAGEMENT STATEMENT AND PROPOSED AGENDA**<br><br>Judge: Hon. Rita F. Lin<br>Courtroom: 4 – 17th Floor |

In advance of the October 14, 2026 discovery status conference, Plaintiffs and Lyft, Inc. submit this Joint Case Management Statement and Proposed Agenda.

**PROPOSED AGENDA**

1. **Status of Plaintiffs' Case Filings**
2. **Discovery Update**
3. **Update to Court on ADR/JCCP**

Separately, the parties will be prepared to present argument on Lyft's motion to dismiss.

## I. STATUS OF PLAINTIFFS' CASE FILINGS

As of October 7, 2026, there are 136 cases in this MDL, and approximately 2,000 plaintiffs coordinated in the JCCP.

## II. DISCOVERY UPDATE

On May 29, 2026, the Court entered the schedule for this proceeding (PTO No. 11, ECF 178)), including the deadline for Lyft to substantially complete production of documents (January 4, 2027) and the opening of Wave 1 Bellwether Case Specific Discovery (July 5, 2027). Because the parties could not agree on a neutral update regarding discovery, they set forth their respective statements below.

### A. Plaintiffs' Statement.

Plaintiffs have significant concerns that the Court's PTO No. 11 schedule may be in jeopardy because of Lyft's own collection failures and its lack of candor about them. With less than three months remaining before Lyft's January 4, 2027 substantial completion deadline, Lyft has only collected custodial files for nine (9) of the ninety-one (91) agreed-upon custodians. Plaintiffs do not know when the remaining eight-two (82) custodians will be collected as Lyft has not disclosed this information. In fact, Plaintiffs just learned that Lyft's collection of custodial data for fifty-three (53) JCCP custodians was never complete, despite contrary representations to Plaintiffs and the Court. Lyft recently disclosed that it only collected a "subset" of the designated custodians' materials in the JCCP. To date, Lyft has only fully collected custodial files for nine (9) of the ninety-one (91) agreed upon custodians in this MDL.

The JCCP was formed in December 2019, nearly seven (7) years ago and the parties here have conferred numerous times about the JCCP custodians and collections since then. Throughout the process, Lyft represented to Plaintiffs and the Court that that the JCCP custodial collections for fifty-three (53) custodians were "complete." However, on September 30, 2026, for the first time, Plaintiffs learned that these representations were false. Lyft disclosed that the custodial document collection for these JCCP custodians was not complete because of unexplained "technical issues" and Lyft must now re-collect, ingest and de-duplicate custodial data for all fifty-three (53) JCCP custodians.

In addition to this grave deficiency, Lyft also advised Plaintiffs that the MDL-specific collection is no better. Due to other "technical issues" they have only been able to collect custodial data for nine (9) of the thirty-eight (38) additional custodians identified by the Plaintiffs in this MDL. Even more troubling, Lyft is unable to provide a date when the remaining MDL custodians and the JCCP custodians will be fully collected and produced. A PTO No. 18 brief regarding the custodial production and the schedule to complete validation is currently pending before Magistrate Cisneros. ECF 457. Meanwhile, although Lyft was required to begin rolling productions on September 30, 2026, it has produced less than 4,000 pages of documents to date, the bulk of them only recently, notwithstanding the Court's deadline that required Lyft to substantially produce documents previously produced by Lyft to government entities by August 17, 2026. Indeed, despite two Court Orders, Lyft provided these governmental productions only recently and in piecemeal fashion.

The fast approaching January 2027 deadline is a lynchpin to Plaintiff's common liability case. Based on it, Plaintiffs will identify the right corporate witnesses to depose and build the general liability case. But that depends on timely receiving the custodial productions with contemporaneous privilege logs so disputes can be briefed and decided long before depositions are underway. The bellwethers and experts will rely on this general liability evidence and it is critical that Plaintiffs have sufficient time to prepare for and take these depositions before bellwether discovery starts in July 2027.

Moreover, there are concerning discovery hurdles that remain, including long outstanding questions about what Lyft's non-custodial sources including what it intends to produce from some still unidentified non-custodial sources, and when, and in what format, Lyft will make that production. Lyft's assertion that it unsuccessfully sought to confer with Plaintiffs regarding these sources is inexplicable given the dozens of conferrals the parties have had when these sources have been discussed. In addition, Lyft is seemingly attempting to limit discovery in the MDL based on its position that the MDL discovery reaches beyond that of the JCCP. However, the Plaintiffs in the MDL are not limited by the discovery that took place in the JCCP and Lyft may not arbitrarily impose such restrictions.

Lyft has also made wholesale objections to Plaintiffs' discovery that highlight a fundamental disconnect in how Lyft perceives the scope of this MDL, e.g., Lyft did not place litigation holds on any Executive Leadership Team members for this matter. Lyft's absence of holds on these custodians raises a significant concern about Lyft's preservation of evidence. All this highlights Plaintiffs' significant concerns about how this will impact the Court's schedule.

Lyft's response that concerns are premature because there is "ample time" in the schedule cannot be squared away with these facts especially considering that less than 10% of the custodians have been collected. Plaintiffs cannot be inundated with the entire production on January 2027. Lyft must commit the necessary resources to comply with the Court's deadlines to begin rolling productions immediately. Plaintiffs seek guidance from the Court regarding adhering to the Court's Case Schedule.

**B. Lyft's Statement.**

Lyft has been working diligently to collect, review, and produce documents in this proceeding. Plaintiffs completed their custodian identification on September 17, 2026 and finalized their 293 search strings thereafter; Lyft has been processing the data for those custodians and applying those strings, and it made its first rolling production on September 30, 2026 (consistent with the case schedule). Moreover, Lyft has made significant progress on a number of the outstanding custodial collections, including, just in the last seven days, completing ingests for 34

additional sources and exports for an additional 20 sources. Lyft will continue to make rolling productions in advance of the January 2027 substantial completion date.

Plaintiffs state they have "significant concerns" the case schedule is in "jeopardy." Lyft does not agree—there is ample time in the schedule before, for example, bellwether selection, bellwether discovery, and the substantial completion of general-liability discovery to render that statement premature at best (and intentionally misplaced at worst). To be sure, as it detailed in the parties' recent briefing before Judge Cisneros (ECF 457), Lyft faces challenges in collecting and processing the substantial custodial data at issue in this proceeding (and thus it has agreed to provide regular updates to Plaintiffs on its collections progress). Although Lyft has sought to address these challenges (by, for example, hiring contractors to assist in data transfer and expanding its team of document reviewers), at least some of them are technological limitations inherent in the systems Lyft uses. (The volume of that data, moreover, is larger than anticipated when the parties initially were discussing a schedule for this matter. For example, Lyft proposed 9 new custodians and 26 new search strings (to be added to those from the JCCP); Plaintiffs ended up with 38 new custodians and 293 search strings.[1]) Lyft will continue to proceed expeditiously and work with Plaintiffs to make document production efficient; certainly, with search terms and custodians finalized (subject to very targeted objections by Lyft to three custodians' relevant date ranges for review and production) and Lyft in the midst of collection and processing, the parties will have more information regarding the deadlines in this proceeding at the next conference. Lyft does not believe that any action from the Court is necessary at this time.

The remainder of Plaintiffs' update largely criticizes Lyft's discovery positions to date and, needless to say, Lyft disagrees with Plaintiffs' characterizations and the narrative they forward. For

[1] Regarding the JCCP custodians' data, due to technical limitations that existed at the time of collections, Lyft did not collect custodians' full data in that proceeding but a subset of it. When Lyft recollected this, it promptly informed Plaintiffs' counsel and confirmed that it would collect those custodians' full files for the agreed upon time period. (Plaintiffs' characterizations of this matter are incorrect.) Although Lyft initially suggested the parties need not redo the collections and productions from the JCCP (which were the product of extensive negotiation, direction from Plaintiffs' counsel, and agreement on how many documents Lyft would (and could) review in advance of trial settings), with guidance from the Court, Lyft compromised on this position, and it will be running all of the MDL search terms against the data.

example, Plaintiffs raise concerns about non-custodial productions, but Lyft sought to confer with Plaintiffs about that issue multiple times, requests that went unanswered until only recently. Plaintiffs suggest they are concerned about preservation without any support, and, notably, the files of many members of Lyft's Executive Leadership Team were under litigation holds on other matters—something Lyft has advised Plaintiffs multiple times.

The parties, no doubt, have disagreements about discovery, including its appropriate scope. (That this is the case is unsurprising, as such disputes often are a feature of litigation—particularly so here as Plaintiffs are seeking to draw discovery much more expansively than what has taken place in the JCCP.) The parties have a mechanism to present those disputes to the Court if they arise; case-management statements are not it and Lyft hopes that the statements will not continue to be a vehicle for misplaced complaints.

## III. UPDATE TO COURT ON ADR IN THE JCCP

The parties in the JCCP continue to meet and confer regarding an ADR protocol but have not yet reached an agreement.

Dated: October 7, 2026

Respectfully submitted,

By: *Rachel Abrams*

Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

Aimee Wagstaff (SBN 278480)
**WAGSTAFF LAW FIRM**
940 N. Lincoln Street
Denver, CO 80203
Telephone: (720) 255-7623
awagstaff@wagstafflawfirm.com

Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

By: *Beth Stewart*

Beth A. Stewart (admitted *pro hac vice*)
David Randall J. Riskin (admitted *pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
bstewart@wc.com
driskin@wc.com

*Counsel for Defendant Lyft, Inc.*

Kristen L. Richer (SBN 315883)
Joshua J. Wes (SBN 238541)
**BARNES & THORNBURG LLP**
2029 Century Park East, Ste. 300
Los Angeles, CA 90067
Telephone: (310) 284-3880
Facsimile: (310) 284-3894
kricher@btlaw.com
jwes@btlaw.com

*Defense Liaison Counsel and*
*Counsel for Defendant Lyft, Inc.*

Nadine S. Kohane (admitted *pro hac vice*)
**BARNES & THORNBURG LLP**
390 Madison Ave., 12th Floor
New York, NY 10017
Telephone: (646) 746-2000
Facsimile: (646) 746-2001
nkohane@btlaw.com

**FILERS ATTESTATION**

Under Civil Local Rule 5-1(h)(3), I attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: October 7, 2026 By: *Rachel Abrams*