UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: LYFT, INC. PASSENGER SEXUAL ASSAULT LITIGATION

Case No. 26-md-03171-RFL

**NOTICE OF QUESTIONS FOR HEARING REGARDING LYFT'S MOTION TO DISMISS AND OCTOBER 14, 2026 CASE MANAGEMENT CONFERENCE**

Re: Dkt. No. 320

The Court requests that the parties be prepared to address the following questions at the hearing on Lyft's motion to dismiss portions of the master complaint, set for October 14, 2026, at 1:30 p.m., in Courtroom 4 on the 17th floor of the San Francisco Courthouse:

1. The California Public Utilities Commission's 2017 order (1) "decline[d] at this time to add a biometric-based background requirement to those in Pub. Util. Code § 5445.2"; (2) found Lyft's background checks compliant with the existing background check requirements of Section 5445.2; and (3) found that requiring fingerprinting would not add "a demonstratively greater level of safety . . . over and above the current background-check protocols." (Dkt. No. 319-21 at 25.) Lyft argues that allowing a negligence claim based on Lyft's allegedly inadequate background checks would interfere with the PUC's judgment. The first two decisions relate to Section 5445.2's minimum standards, which set a floor rather than a ceiling, so imposing liability for failing to fingerprint drivers would not seem to interfere with the PUC's judgment. On the other hand, that is not necessarily true for the third

decision, which involved a weighing of costs and benefits. There, the PUC concluded that any safety gains would be insufficient to outweigh labor market disruption and delays for drivers if biometric checks were required industrywide. But as to that issue, wouldn't the degree of interference with the PUC's judgment depend on the specific theory of negligence asserted? For instance, liability premised on Lyft having unique knowledge that "its background checks are inadequate and . . . that fingerprint-based background checks would be safer" wouldn't seem to conflict with the PUC's industry-wide balancing of costs and benefits. (*See* Dkt. No. 175 ¶ 12.) By contrast, liability premised on name-based background checks having "systematic, fundamental problems" across the board might be more likely to call into question the PUC's determination. (*See id.* ¶ 127.) Because there are some theories on which the California negligence claim could proceed without interfering with the PUC's judgment, would dismissal on that basis be inappropriate, recognizing that the issue may need to be addressed later at summary adjudication or motions in limine? Also, more fundamentally, the PUC's balancing analysis was based on background check systems and the labor market as of nine years ago. How could a negligence suit based on evidence from today be viewed as undercutting an assessment made so long ago?

2. Lyft's other examples of interference actually seem to be ways that a court could act "in aid of" the PUC's decision-making. *See Hartwell Corp. v. Superior Ct.*, 27 Cal. 4th 256, 275 (2002). The PUC's failure to adopt certain requirements for the entire industry at this juncture does not seem to reflect a broader judgment from the PUC about whether additional requirements might be a good idea in certain circumstances or after further evaluation by other actors. Why is that incorrect?
3. Plaintiffs contend that Cal. Pub. Util. Code § 1759 only limits the jurisdiction of state courts and has no impact in federal court. Though the Ninth Circuit does not appear to have expressly considered this issue, it has treated Section 1759 as a substantive

limitation on liability in federal court. *See, e.g.*, *Kairy v. SuperShuttle Int'l*, 660 F.3d 1146, 1150 (9th Cir. 2011). Isn't that binding here? Moreover, would construing Section 1759 as inapplicable in federal court present an *Erie* problem?

4. Lyft contends that even if the Lyft app is a product, its primary objective is to facilitate the service of obtaining a ride. But aren't there lots of situations where product liability is imposed on a product used to access a service, like a television, a cell phone, or a home alarm system?

Additionally, the Court requests that the parties be prepared to address the following questions at the case management conference:

1. The Court expects the parties to meet the January 4, 2027 deadline for substantial completion of document production. That does not mean all of the documents should be produced at the end. If either party is prejudiced by the pace of discovery, it may explain that afterwards and seek appropriate relief. Otherwise, the case schedule will remain as set. Do the parties have any objections to that approach?
2. Do Plaintiffs' Co-Lead Counsel believe that Elana B. Goodman should step down from Plaintiffs' Steering Committee in light of the circumstances giving rise to the now-withdrawn notice of voluntary dismissal in *JANE SL103 v. Lyft*, No. 26-cv-04201?

At the hearing, each side will address each question in the sequence stated above, and then at the end, the parties will have additional time to present any additional argument that they wish the Court to hear. The parties **shall not** file written responses to this Notice of Questions.

**IT IS SO ORDERED.**

Dated: October 9, 2026

RITA F. LIN
United States District Judge