Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

Aimee Wagstaff (SBN 278480)
**WAGSTAFF LAW FIRM**
940 N. Lincoln Street
Denver, CO 80203
Telephone: (303) 376-6360
awagstaff@wagstafflawfirm.com

Roopal P. Luhana
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

*Additional Counsel on Signature Page*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: LYFT, INC. PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:26-md-03171-RFL<br><br>**JOINT LETTER REGARDING GOVERNMENT DOCUMENTS PRODUCTION**<br><br>Judge: Hon. Lisa J. Cisneros |

Dear Judge Cisneros:

The parties respectfully submit this joint letter regarding Lyft's production of documents it previously produced to government entities.

Dated: October 26, 2026

Respectfully submitted,

*/s/ Aimee Wagstaff*

Aimee Wagstaff (SBN 278480)
**WAGSTAFF LAW FIRM**
940 N. Lincoln Street
Denver, CO 80203
Telephone: (303) 376-6360
awagstaff@wagstafflawfirm.com

Roopal P. Luhana (admitted *pro hac vice*)
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
luhana@chaffinluhana.com

Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
rabrams@peifferwolf.com

*Co-Lead Counsel for Plaintiffs*

*/s/ David Riskin*

Kristen L. Richer (SBN 315883)
Sandra M. Ko (SBN 260863)
**BARNES & THORNBURG LLP**
2029 Century Park East, Ste. 300
Los Angeles, CA 90067
Telephone: (310) 284-3880
kricher@btlaw.com
sko@btlaw.com

*Defense Liaison Counsel and Counsel for Defendant Lyft, Inc.*

Nadine S. Kohane (admitted *pro hac vice*)
**BARNES & THORNBURG LLP**
390 Madison Ave., 12th Floor
New York, NY 10017
Telephone: (646) 746-2000
nkohane@btlaw.com

Beth A. Stewart (admitted *pro hac vice*)
David Randall J. Riskin (admitted *pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
bstewart@wc.com
driskin@wc.com

*Counsel for Defendant Lyft, Inc.*

**Plaintiffs' Position**

**I. The Court Required Prompt Discovery; Lyft Resisted It**. Since the inception of this litigation, the Court clearly established its expectation that the parties work together to adhere to a strict and expedited discovery schedule. To further this goal, at the first CMC the Court opened discovery prior to ruling on the pleadings, finding it "more efficient to just get going on this initial slug of discovery that we know will be needed, has already been produced in other litigation, will almost certainly be relevant, and will have a very low burden to be produced." Mar. 25, 2026 Hr'g Tr. ("Mar. Tr.") at 10:15–22. "I just don't see a reason to wait." *Id.* at 10:23.

The Court has held that line since. On September 23—one week before Lyft's extended deadline here—Judge Lin expressed concern that discovery was "taking longer . . . than I would normally expect" and "should be well underway, not just with the documents that were already produced to the Government . . . but with new document collections." Sept. 23, 2026 Hr'g Tr. ("Sept. Tr.") at 7:12–24. But Lyft has disregarded these directives and instead has taken every opportunity not only to delay discovery and production, but to impose its own view of the appropriate scope of discovery. Nowhere is that more evident than in Lyft's failure to comply with multiple Court Orders requiring production of the documents it gave government regulators concerning sexual assault. Lyft raises concerns regarding the PTO 18 process. The parties have been conferring on this issue since August and Plaintiffs believe they have complied with the PTO 18 procedure.

**II. Lyft Repeatedly Failed to Meet the Court's Deadlines**. Plaintiffs requested "all documents Defendants produced to legislative, regulatory, or enforcement entities in connection with government investigations or inquiries of Lyft with respect to sexual assault . . . and any associated privilege logs." [Dkt. 46]. The Court assumed Lyft had "already processed" these materials for production. Mar. Tr. at 13:21–14:1. Lyft nonetheless sought more time, citing the lack of a "central repository" and conceding that counsel "need[ed] to get smarter on exactly how the company would pull that together." *Id.* at 14:7–19. The Court, however, told Lyft it expected production of "the government regulator set" "not too long after" the May 1 deadline for production of the JCCP materials. *Id.* at 24:23–25:3. Accordingly, the Court entered PTO 11 and set August 17 as Lyft's deadline for substantial completion. [Dkt. 178]

Lyft has not fully produced this discovery nor made a rolling production. Rather, on the deadline date, it produced 332 data spreadsheets without context—and nothing else—and certified that its production was substantially complete. Plaintiffs identified the deficiencies two days later and asked Lyft to confirm that it had conducted a complete search. *See* **Ex. 1**. Lyft failed to do so, and when Plaintiffs raised the issue to the Court, this Court ordered production by September 7. [Dkt. 393]. At Lyft's request, the Court extended that deadline to September 30. [Dkt. 416]. Despite receiving an additional six weeks to comply, Lyft's production (sent, again, on the last day of that extension) remains deficient.

**A. *Missing reports.*** Since the parties began conferring about the scope of discovery over six months ago, Plaintiffs repeatedly advised Lyft that all safety data on drivers is relevant to their claims. Rather that producing complete data, Lyft unilaterally defined the scope of its government production without telling Plaintiffs the production was incomplete. One of the most egregious examples involves the cherry-picked production of Lyft's Annual Reports to the California Public Utilities Commission ("CPUC"). Those reports provide the CPUC with data and statistics across

several categories of safety data – including sexual assault, traffic violations, collision reports, etc. When Plaintiffs reviewed the CPUC Annual Reports, it was unclear from the disorganized document tranche[1] whether Lyft had included all nineteen data attachments to each report in its production.

During the parties' meet and confer on October 21, Plaintiffs questioned whether all of the CPUC attachments were provided. It was only then that Lyft conceded that for each Annual Report, it had only produced one of the nineteen attachments – Exhibit C.4 titled Assaults and Harassments. Lyft withheld the other eighteen attachments for each Annual Report without advising Plaintiffs that those documents were not produced. Lyft explained it withheld the documents because it believed they were outside the scope, even though the attachments contain safety data produced to government agencies.

Lyft's belated disclosure raises significant concerns not only regarding the deficient CPUC reports, but for Lyft's entire production. Lyft unilaterally decided not to produce these documents, structured its production in a disorganized way obscuring their omissions, and failed to advise Plaintiffs what was withheld. Further review of the production reveals other potential omissions, including failing to produce complete documents related to reporting requirements that Plaintiffs have reason to believe exist including reports to the U.S. Department of Justice and complete exchanges and reporting to various states, such as Nebraska and Maryland.

Lyft improperly construes PTO 11 to permit it to unilaterally determine which documents previously produced to government entities concern sexual assault. The withheld CPUC attachments contain safety data potentially relevant to Lyft's assessment of sexual-assault risks and cannot be excluded simply because they address other safety categories. Nor does Lyft's identification of certain Nebraska and Maryland reports, or its explanation concerning the DOJ inquiry, establish that its production is complete. Lyft should be required to identify withheld responsive materials, explain any omissions, and certify that it conducted a complete search.

B. ***Missing legislative correspondence.*** Plaintiffs' request expressly covers "legislative" entities, yet Lyft has produced none of its communications with Senator Richard Blumenthal; the nine members of Congress who questioned Lyft about passenger safety in June 2019; Subcommittee Chairs DeFazio and Norton, including Lyft's response to their October 17, 2019 letter; or Congressman Smith and the House Transportation and Infrastructure Committee. *See* Ex. 1. These are illustrative examples as Plaintiffs do not know the full extent of Lyft's responsive communications with government entities.

**C.** ***Missing requests, correspondence, and data.*** The spreadsheets show that Lyft sent recurring data to the CPUC beginning in September 2019, and to regulators in Nebraska (May 2020), Massachusetts (August 2021), and Oregon (July 2015). Lyft has not produced a single request that prompted these disclosures or follow-up communication relating to any of those disclosures. It is not plausible that Lyft sent years of safety data to four regulators on its own initiative and without any intervening correspondence. The data itself also has gaps: Massachusetts driver and rider complaint data is missing for May 2021, Jan–Mar 2022, and May 2022–April

---

[1] Both tranches of the government production were akin to a "document dump." No organizational structure for the production was provided, and the documents do not appear to be produced as they were kept in Lyft's usual course of business pursuant to FRCP 34(b)(E).

2023 (and rider data for April 2025); Oregon data is missing for Feb. 2023; and contain apparent Oregon or Portland data for 2022 and 2026 only.

**III. What Lyft Did Produce Is Stripped of Context and Has Been Redacted.** The 332 spreadsheets produced in the initial tranche on August 17 contain assault and harassment incident reports, driver and rider complaint reports, trip data, and aggregate incident metrics—but no cover letters, no explanation of what the data represents, no identification of the sender or recipient, and no transmission dates. The second tranche produced on September 30 does not remedy this – of the 1,260 documents produced, 1,082 are internal rider complaints to Lyft through ZenDesk. The tickets refer to communications between Lyft and drivers or riders that Lyft did not produce, and they do not show who requested them, whether and to what extent Lyft negotiated on the nature and scope of what it was to produce with respect to any particular government entity's investigation or inquiry, which entity received them, or why. They reveal nothing about what Lyft told any regulator. Raw data divorced from the transmittals that explain it is not what the Court ordered Lyft to produce.

Another example is LYFTMDL_GOVT_00000427, which appears to be a 2022 report concerning assaults and harassment. It contains several columns with headings such as "AssaultHarass" in which every entry reads "REDACTED." Any privacy concerns about individual identifiers can be addressed through the protective order and targeted redactions. Lyft has no basis to redact entire columns of sexual assault data that Lyft already disclosed to a regulator.

Lyft's assertion that it provided an index identifying reports by Bates range and agency does not cure the deficiencies in its production. Such an index does not necessarily identify the requests prompting the disclosures, the communications accompanying them, or the context necessary to understand what information Lyft provided to regulators. Likewise, Lyft's assertion that certain documents contain preexisting redactions does not resolve whether the underlying sexual-assault data exists and should be produced.

**IV. Lyft Continues to Resist Compliance.** During the parties' last meet and confer on this issue on October 21, Lyft's position was that (1) it would not certify the production was substantially complete; (2) it is willing to review the ESI custodians designated by Plaintiffs to see if Lyft "missed" any responsive documents in its initial collection; (3) it would not provide the missing attachments to the CPUC Annual Reports, and (4) it would not agree to any expedited production and would stick to the January 4, 2027 substantial completion date for all document production.

Lyfts' positions are untenable and antithetical to the Court's directive that substantial production of the government production take place by the extended deadline of September 30. Plaintiffs therefore respectfully request that the Court order Lyft, within seven [7] days, to: (1) produce all reports, attachments, exhibits, linked materials, and correspondence referenced in its government productions or identified in Exhibits 1 and 2, including its legislative communications; (2) identify the government entity that received each produced document and produce the associated transmittals and the communications that prompted each recurring disclosure; (3) produce redacted documents without redactions; and (4) serve a sworn declaration from a Lyft representative with personal knowledge describing the sources searched and certifying that the production is complete. Plaintiffs further request that the Court advise Lyft that continued non-compliance will result in sanctions under Federal Rule of Civil Procedure 37(b)(2).

## Lyft's Position

Plaintiffs' purported PTO 18 insert was premature (and inaccurate), and Lyft expects Plaintiffs will abide by the process the Court ordered going forward. But aside from their procedural frailty, Plaintiffs' arguments are substantive meritless. Lyft has complied with the Court's government-discovery order, and Plaintiffs' suggestion to the contrary ignores the record and imagines the Court's order to require productions that it does not. Finally, Plaintiffs' drive-by sanctions request is unwarranted and deficient (Plaintiffs have done none of the things the Federal Rules require).[2] The Court should deny Plaintiffs' demands.

### A. Lyft Has Complied with the Court's Government-Discovery Order.

Lyft always has understood the Court's government-discovery order to direct production of materials Lyft previously had produced to regulators—production of off-the-shelf documents in other words (akin to the materials produced in the JCCP)—not an entirely new and separate collection. Informing Lyft's position were the comments the Court made at the March 25, 2026 (which Plaintiffs, too, quote at the outset of their statement), where it observed it wanted Lyft to provide an "initial slug of discovery that we know will be needed, *has already been produced in other litigation*, will almost certainly be relevant, and will have *a very low burden to be produced*." (Hr'g Tr. (Mar. 25, 2026), at 10:15–22 (emphases added).) And specifically, as regards to "materials that have been produced to government regulators," the Court asked if Lyft could provide them by an interim date based on an "assum[ption] [Lyft] already processed for production on some level" the documents to government regulators. (Mar. 25 Tr. 13:21–14:1.)

The resulting order reflected this. It described government discovery as "discovery previously produced by Lyft to government entities (other than grand juries) regarding rideshare sexual assault." (PTO 11 at 2.) Simply put, the Court directed Lyft to produce documents and information it produced to government regulators on sexual assault, and Lyft has complied.[3]

### B. Plaintiffs' Arguments that Lyft Has Not Complied Are Incorrect.

Plaintiffs offer a smorgasbord of theories as to why Lyft has not complied with the government-production order. None have merit.

#### 1. The Production Is Not a "Disorganized Tranche."

Plaintiffs first criticize the production as "disorganized," but neither of their supposedly-supporting charges—that Lyft redacted some material and that its production is a "document dump"—withstands scrutiny.

***Redactions.*** Contrary to Plaintiffs' assertion, Lyft has not applied any redactions to LYFTMDL_GOVT_00000427, which Lyft told Plaintiffs on October 15. (Lyft's Oct. 15 Correspondence, Ex. A at n.5). That was before Plaintiffs circulated this position statement. Where

---

[2] Plaintiffs' counsel chastised Uber for doing exactly what they do here: "creating a conflict where none ought to exist, infusing it with apocalyptic-sounding adjectives, and seeking sanctions without meaningfully conferring with opposing counsel." *In re Uber*, 23-md-3084 (N.D. Cal. May 6, 2026), Dkt. 6120 at 23-25 (cleaned up).

[3] Lyft initially produced the data it had reported to regulators concerning sexual assault, including reports to the California Public Utilities Commission, the Massachusetts Department of Public Utilities, the Nebraska Public Service Commission, and the Portland Bureau of Transportation. (Dkt. 394-1 at 2–3.) When Plaintiffs asked for additional "context," Lyft went back and searched for the transmittal materials—cover letters, requests, and related correspondence—that accompanied those reports, to the extent any existed. (Dkts. 394, 411.) With the Court's leave, Lyft produced those materials, along with additional responsive reports it identified, on September 30. (Dkt. 416.)

Lyft applied redactions—which it limited to personal identifying information such as driver names and license numbers, and vehicle identification numbers—Lyft stamped the redactions "PII." Non-party drivers have a privacy right in their information, and the fact a regulator has a right to that information does not mean Plaintiffs do here. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003) (approving "redacti[on of] identifying information of third parties (e.g., their names, addresses, telephone numbers, and social security numbers)"). Certainly, without a court order, Lyft's disclosure of such third-party confidential information risks potential litigation from affected third parties.

***Plaintiffs' "document dump" charge is disingenuous at best***. Not only did Lyft provide the documents to Plaintiffs as they were provided to the government, but also Lyft provided Plaintiffs with an index of the reports by Bates range and agency. (Ex. A). Plaintiffs' claim of confusion over the Zendesk tickets is similarly unfounded. As Lyft explained in October 15, 2026 correspondence and as is clear from the CPUC cover letter (which Lyft produced), the 1,082 Zendesk tickets Plaintiffs dismiss as "internal rider complaints" are materials Lyft produced to the CPUC in connection with a data request related to rideshare sexual assault. (Ex. A at 1–2.)

**2. The So-Called "Missing" Reports Are Not.**

***The CPUC Annual Reports Are Not Missing.*** Lyft produced the Annual Report data regarding sexual assault (including Exhibit C.4, "Assaults and Harassments") on August 17. (Ex. A at 3). At Plaintiffs' request for additional "context" for these reports, Lyft collected and produced the transmittal materials for those submissions. *Id*. Although those transmittals reference *other* reports Lyft provides to the CPUC each year, none of those other reports concern rideshare sexual assault; they are outside the scope of the government-discovery order. Lyft explained all of this during an October 21, 2026 conference. Insofar as Plaintiffs believe that non-sexual-assault-related reports to the CPUC are relevant, that is an issue for corporate discovery, not PTO 11.

***The DOJ, Nebraska, and Maryland Reports Are Not Missing.*** Plaintiffs' arguments about these reports show Plaintiffs have not reviewed the materials Lyft produced.

- The supposed DOJ report, from a list on a JCCP-produced document (LyftJCCP_00833313), is denoted as a "Federal request regarding mobility devices on the platform" (Ex. A at 2). Lyft has told Plaintiffs at least four times this is an *accessibility inquiry* (that is, related to wheelchairs, walkers, and mobility aids) and has nothing to do with rideshare sexual assault. (The same document describes "quarterly WAV reports" as about wheelchair-accessible vehicles, a report Plaintiffs previously insisted Lyft produce.)
- Lyft produced the Nebraska reports together with the associated requests and transmittals (LYFTMDL_GOVT_00000160–164; LYFTMDL_GOVT_00000333–384) as well as the Maryland Annual Reports (LYFTMDL_GOVT_00000385–415). Lyft told Plaintiffs all of this a week before they circulated their PTO 18 position statement above. (Ex. A at 3.)

***Lyft Produced "Requests, Correspondence, and Data" Where Available.*** Simply put, where data requests or transmittal letters existed, Lyft collected and produced them, including the CPUC transmittals and follow-up requests and the Nebraska requests and transmittals. (Ex. A at 5.) But as Lyft has advised Plaintiffs for more than a month, many of these reports, including those to Seattle, King County, and Portland, are made under standing regulations rather than in response to a specific request. (Ex. A at 3; *see also* Dkt. 394-1.) Recurring regulatory submissions without "intervening correspondence" therefore are not only plausible, but what occurred.

Lyft advised Plaintiffs that no transmittal materials accompanied the reports they describe as "missing." (Ex. A at 5.) And PTO 11 does not require written interrogatory-response-like narratives of why a report was filed; those questions are for depositions. (Dkt. 394-1 at 3; Ex. A.)

**3. Plaintiffs' Additional Documents Are Outside the Scope of the Court's Order.**

***All Safety Data Is Not Required for Production in Government Discovery.*** Plaintiffs say that "*all* safety data on drivers is relevant to their claims" and suggest that all regulatory reports, whether they relate to rideshare sexual assault or not, fall within the Court's government-discovery order. Not so. The sole support for this overbroad reading is Plaintiffs' own March 12, 2026 case-management statement (Dkt. 46); that, of course, does not define the scope of the Court's order. The Court ordered prior productions to government entities "regarding rideshare sexual assault." Dkt. 178 at 2.

***Legislative Correspondence.*** One-off emails with Congress are not "discovery previously produced to government entities." Of course, Plaintiffs already have many of these communications from the JCCP production, and Lyft twice has offered to discuss a targeted supplemental search of the 91 MDL custodians' files in connection with corporate discovery, beyond the as-ordered search terms, to identify any further such communications. Plaintiffs have rejected this proposal. Whatever the case, this is not a government-discovery-order issue.

**B. The Process that Resulted in this Submission Was Problematic.**

The parties no doubt will have plenty of discovery disputes they need to work through; the issues Plaintiffs have raised here are not among them. And beyond that, the process Plaintiffs followed is problematic because it was inconsistent with the PTO 18 process. Consider:

- On October 12, 2026 (after purporting to review Lyft's September 30 production), Plaintiffs identified four purported concerns and asked for a meet and confer.
- The next day, Plaintiffs replied to their own email with a draft of a purported PTO 18 insert.
- Lyft responded by noting Plaintiffs' failure to comply with PTO 18, and addressing the assertions Plaintiffs made in their October 12 correspondence and October 13 statement.
- The parties then conferred on October 16 and again on October 21, at which time Plaintiffs agreed that on October 22 Plaintiffs would notify Lyft whether Plaintiffs were (1) standing on their October 13 submission or (2) sending Lyft a revised submission. Regardless, the parties agreed Lyft would have three business days from such time to provide its response.
- Late the next day, Plaintiffs chose to send a revised submission, but then unilaterally demanded that Lyft provide a response within one business day. Plaintiffs threatened to submit a unilateral position statement to the Court if Lyft did not comply.

This, of course, is not the process PTO contemplates. Nor is it conducive to the good-faith discovery work the Court, the Federal Rules, and Lyft contemplate. Plaintiffs, of course, are free to bring disputes (real or imagined) to the Court; they are not free to ignore the Court's orders and create their own procedure. Nor are they free to demand Lyft's adherence to their artificial (indeed, Court-order-violative) deadlines. Lyft has provided this response to Plaintiffs' submission to avoid arguments about waiver, but it would behoove the discovery process for PTO 18's clear procedures to apply in the straightforward manner the PTO directs.

**SIGNATURE ATTESTATION**

I hereby attest that I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 4-1(i)(3), I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Date: October 26, 2026

Respectfully submitted,
**WAGSTAFF LAW FIRM**
By: */s/ Aimee Wagstaff* _
Aimee Wagstaff, Esq.

*Counsel for Plaintiffs*