*[Submitting Counsel Below]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: LYFT, INC., PASSENGER SEXUAL ASSAULT LITIGATION | Case No. 3:26-MD-03171-LCJ<br><br>**JOINT STATUS REPORT AND PROPOSED AGENDA** |
| This Document Relates to:<br><br>ALL ACTIONS | Judge: Hon. Lisa J. Cisneros<br>Courtroom: G – 15th Floor |

## I. Update on Ingestion and Processing of Custodial Data and Schedule for Completion of Keyword Validation

### A. Plaintiffs' Statement

On October 9, 2026, the Court ordered Lyft to complete ingestion and processing of custodial data by November 6, 2026 and further ordered search term validation to commence by November 20, 2026. (Dkt. 461). After Lyft moved for an extension (Dkt. 486) and Plaintiffs opposed (Dkt. 489), the Court continued the deadline to complete ingestion nunc pro tunc to November 9, 2026, and ordered the parties to meet and confer and stipulation to a new downstream schedule. (Dkt 499). Following meet and confers on November 12 and 13, 2026, the parties agreed to a keyword validation schedule and filed a Stipulation with the Court on November 13, 2026 Doc. 503). The Court granted the parties Stipulation on November 16, 2026. (Dkt. 504). Under the agreed schedule, search term validation commenced on November 11; Lyft will make the non-privileged documents in the Keyword Sample Sets available to Plaintiffs' Designated Attorney Reviewers on November 18; Lyft will serve its Search Term Validation Privilege Log by November 21; Plaintiffs will complete their review by November 30; Lyft will provide its prevalence calculations by December 2; Plaintiffs will identify any coding disputes and any proposed search term additions or modifications by December 3; the parties will meet and confer by December 4; and the parties will submit any unresolved disputes to the Court via PTO 18 briefing by December 7, 2026.

### B. Lyft's Statement.

On November 9, 2026, Lyft's e-discovery vendor completed ingesting 85 Terabytes of data from the 91 custodians (dozens more than in the Uber MDL) in this proceeding. That data yielded 34 million unique documents; 6.7 million documents in this set hit on the 293 Court-ordered search strings, with another 2 million documents as their family members. This set of 8.8 million documents reflects the pool of custodial data for which Lyft is conducting a responsiveness and privilege review. The team conducting that review comprises more than 100 individuals, and they are working alongside dozens of attorneys to meet the deadlines in this proceeding. (Lyft addresses

those deadlines below.) Lyft anticipates its third production of custodial documents in the next week.

As the Court knows (Dkt. 412-1), Lyft is reviewing documents that hit upon search terms using TAR 2.0. Reviewers will analyze each document queued for review under TAR 2.0, and Lyft will make rolling productions of those documents as review continues. Documents are not reviewed on a custodian-by-custodian basis due to the manner in which the TAR 2.0 model operates. Lyft has made two productions thus far, and it will make additional rolling productions until TAR 2.0 hits the "stopping point" under the review protocol.

Plaintiffs will have at least two opportunities to validate parts of the custodial discovery process, including validation of (1) the search strings they chose and the Court ordered and (2) TAR 2.0's stopping point. The parties agreed to the timing of the search-string validation process (Dkt. 503), and they anticipate completing that process and raising any disputes to the Court no later than December 7, 2026.

## II. Substantial Completion Deadline

### A. Plaintiffs' Statement.

The January 4, 2027 substantial-completion deadline remains in place. In the November 11, 2026 Joint Case Management Statement (Dkt. 502), Lyft disclosed for the first time that it "now has a concern that it will not be able to meet the January 4, 2027 substantial-completion deadline" and that it "does not currently have an anticipat[ed] date for substantial completion." (Dkt. 502 at 3.) Despite Lyft's nearly seven-year involvement in litigation related to sexual assault incidents on its platform, to date, Lyft has made only two productions in this MDL, consisting of 8,967 documents. (Id. at 2.) and has produced no non-custodial documents or data. With a review pool of approximately 8.8 million custodial documents and seven weeks remaining before the deadline, Plaintiffs are concerned that Lyft's productions will be backloaded, leaving Plaintiffs without adequate time to evaluate the documents, challenge privilege assertions, and prepare for depositions. Plaintiffs are additionally concerned about the lack of transparency regarding when additional rolling productions will be made (and what they will consist of) and have further

concerns regarding Lyft's request to delay updates regarding its ability to meet the substantial completion deadline until the time of the next case management statement in December of 2026. Plaintiffs' position is that it is not only appropriate but imperative that Lyft provide immediate, regular, and frequent updates to allow both the Court and the Plaintiffs to understand the expected timeline and take any additional steps at this time that might be appropriate and necessary.

**B. Lyft's Statement.**

Lyft's efforts at reviewing and producing documents have been robust and aggressive as described in Part I.B above, and they are occurring alongside all of the other discovery tasks in which the parties are engaged and which have resulted from the dispute-resolution process. (That discovery, of course, is focused on Lyft at this stage; Plaintiff-specific discovery will not occur until after bellwether selection, and therefore the bulk of Plaintiffs' counsel's efforts have been to press Lyft for information.) Notwithstanding its efforts or the fact that it will be making periodic rolling productions over the next seven weeks, given the expansiveness of the number of custodians, non-custodial data sources, and document discovery in this proceeding, Lyft has been forthcoming all along that it had concerns regarding the feasibility of the January 4, 2027 substantial completion deadline given the scope of discovery; those concerns were recently crystallized by ingestion being complete (once Lyft could fully appreciate the number of non-duplicative documents hitting on terms). Lyft noted in the parties' recent joint case-management statement (Dkt. 502) that it would provide a further update as to timing by the next set of conferences in early December.

The case deadlines here were set before Plaintiffs served written discovery or identified custodians and search strings. Lyft's vendor now has finished ingesting the data that has yielded 8.8 million documents for which Lyft is conducting a responsiveness and privilege review, and Lyft has been able to undertake that review, Lyft is gaining a better understanding of what the timing of substantial production will be. Lyft, of course, will continue to devote significant resources to document discovery so that it can substantially complete production as close to the January 4, 2027 deadline as possible, and it proposes providing a more-detailed update in the next

case-management statement and discovery status report.

## III. Lyft's Responses to Plaintiffs' Written Discovery

### A. Defendants' Responses to Plaintiffs' Interrogatories

#### 1. Plaintiffs' Statement

The parties have met and conferred regarding Lyft's responses to Plaintiffs' Interrogatories, including the number of interrogatories Plaintiffs may serve. Lyft has failed to provide substantive responses to Plaintiffs' Interrogatories and has further advised that it views the dispute over whether Plaintiffs may serve more than 25 interrogatories as ripe for adjudication. Plaintiffs anticipate presenting this dispute, along with any remaining deficiencies in Lyft's responses, through the PTO 18 process.

#### 2. Lyft's Statement

Lyft intends to serve amended responses to Plaintiffs' interrogatories shortly.

Plaintiffs served 55 interrogatories on behalf of all Plaintiffs, exceeding Federal Rule of Civil Procedure 33's limits (and doing so without the required stipulation or leave of court). Plaintiffs' counsel also has informed Lyft they believe that each bellwether Plaintiff is permitted to serve 25 interrogatories in connection with case-specific discovery, and would not agree to any limit on general discovery. The parties have conferred on this issue, and Lyft advised Plaintiffs it would agree to (i) respond to 50 general interrogatories now, and (ii) that Plaintiffs could seek additional general interrogatories with leave of court and a showing of need. Plaintiffs rejected this proposal, and Lyft expects Plaintiffs will initiate the dispute-resolution process at some point.

### B. Defendants' Responses to Plaintiffs' Requests for Production

#### 1. Plaintiffs' Statement

Plaintiffs served their First Set of Requests for Production on June 17, 2026. Following extensive meet-and-confer efforts, Lyft served Amended Responses on November 6, 2026. Nearly five months after service, Lyft has not produced documents specifically in response to these Requests and has refused to produce documents in response to requests for things such as documentation and email retention policies and contracts and partnerships with rental car

companies. Lyft's amended responses remain deficient in four respects: (1) Lyft seeks to limit its production to the custodians, search terms, and sources negotiated through the ESI process; (2) Lyft categorically refuses to produce documents in response to numerous Requests (e.g., RFP Nos. 27–28, 33–34, 51, 68–69, 72–73, 81–90, 140–142, 154, and 168); (3) Lyft removed its prior references to documents produced in the JCCP without identifying which previously produced documents it contends are responsive; and (4) for most Requests, Lyft states only that it will conduct a future search, without identifying whether responsive documents exist or when they will be produced. The parties have spent many hours over the course of many days meeting and conferring regarding each individual request for production, Further conferral is likely to be fruitless, will only lead to even more delay and prejudice to Plaintiffs, and Plaintiffs and will present these issues through the PTO 18 process.

**2. Lyft's Statement**

Lyft served amended responses to Plaintiffs' 169 document requests on November 6, 2026.

It will not surprise the Court that Lyft disagrees with Plaintiffs' characterizations. For example, Lyft has not sought "to limit its production to the custodians, search terms, and sources negotiated through the ESI process" and has discussed the production of non-custodial data with Plaintiffs *ad nauseum*. The parties are continuing to confer and, as Plaintiffs note, insofar as there are disputes they properly are presented through the dispute-resolution process.

## IV. Production of Documents Previously Produced to Government Entities

**A. Plaintiffs' Statement**

On November 9, 2026, the Court granted in part Plaintiffs' request for relief regarding Lyft's production of materials previously provided to government entities. (Dkt. 497.) The Court ordered Lyft to (1) reproduce the CPUC, Nebraska, and Maryland reports in complete form without redactions or omissions, including omitted attachments; (2) provide a written response addressing the allegedly missing Massachusetts and Oregon reporting periods; (3) supplement its production with its communications with, and productions to, the members of Congress and congressional

committees identified in the Order; and (4) produce any written requests or transmittal communications accompanying the 332 spreadsheets Lyft produced to government entities. (*Id.* at 2.) Lyft must comply by November 24, 2026. (*Id.*)

**B. Lyft's Statement**

In its November 9, 2026 order (Dkt. 497), the Court directed Lyft to supplement its government-discovery production on a handful of topics. Lyft identifies those topics below, and their production status. As the Court will see, Lyft largely already had fulfilled the Court's direction through its productions on August 17, 2026 and September 30, 2026.

- ***Nebraska and Maryland Reports, without redactions.*** Lyft produced the Nebraska and Maryland reports in full, without redactions, and with transmittal materials (where available) on August 17 and September 30.
- ***CPUC reports, without redactions.*** On August 17, Lyft produced CPUC reports regarding rideshare sexual assault. On September 30, Lyft produced the transmittal materials to those CPUC reports, which reference other, non-sexual-assault-related reports to the CPUC (which Lyft did not produce). As the Court now has directed Lyft to produce those unrelated reports, Lyft is in the process of collecting them to meet the Court's November 24, 2026 production deadline.
- ***Massachusetts and Oregon reports.*** Lyft's understanding, based on its prior work, is that there are no missing Massachusetts or Oregon reports. It will reconfirm that understanding by November 24, or otherwise produce any additional documents it identifies.
- ***Correspondence regarding the 332 spreadsheets***. Lyft produced all available transmittal materials and requests for data regarding those spreadsheets on September 30, and it will reconfirm by November 24 its understanding that no such additional material exists.
- ***Communications with legislators.*** Lyft understands the Court has concluded that Lyft's correspondence with legislators is discoverable (even if it did not fall within the scope of the Court's government-discovery production order). As the Court knows, Lyft provided Plaintiffs on September 6, 2026 with a list of bates ranges from the JCCP Production which

relate to communications with legislators, and Lyft will supplement its production with any additional communications with or productions to the legislators identified in the Court's order.

Lyft seeks clarification of one part of the Court's November 9 government-discovery order: that Lyft produce the "CPUC, Nebraska, and Maryland reports … without redactions" for "relevance." Lyft has not made any redactions for relevance; the only information it has redacted is personally identifiable information (for example, rider names, ride requester names, driver names, driver license numbers, license plate numbers, vehicle identification numbers, and addresses).[1] If the Court intended to order Lyft to produce materials with such personally identifiable information available, Lyft of course will do so; it does not believe, however, that it can make that production absent express direction from the Court.

## V. Update on Lyft's Identification of Non-Custodial Data Sources

### A. Plaintiffs' Statement

On November 9, 2026, the Court granted in part Plaintiffs' request for relief regarding Lyft's identification of non-custodial data sources. (Dkt. 496) The Order required Plaintiffs to serve, within three business days, a list of topics covered by their Requests for Production for which the non-custodial sources of ESI remain unclear, and required Lyft, within one week thereafter, to serve a chart identifying for each topic the specific non-custodial data sources likely to contain potentially relevant evidence and the exact information each source includes, together with a declaration from knowledgeable corporate representatives describing Lyft's investigation and certifying that the disclosures are complete and accurate. (*Id.* at 4.) Plaintiffs served their list of topics on November 12, 2026. Lyft's supplemental chart and declaration(s) are due November 19, 2026. Lyft's position statement is the first time that Plaintiffs have learned that Lyft has any questions regarding Plaintiffs' Nov 12 letter. The list accounts for the Parties discussions dating back to April, Lyft's disclosures to date, Plaintiffs current knowledge of Lyft's systems and data

---

[1] Lyft also reproduced 1,082 Zendesk tickets to Plaintiffs that Lyft had produced to the CPUC. The tickets given to the CPUC were redacted for personally identifiable information, and Lyft produced them to Plaintiffs in the same form as it provided to the CPUC.

structure, and Plaintiffs' outstanding discovery requests. To the extent that Lyft requires clarification related to Plaintiffs' Nov 12 letter, Plaintiffs are available to meet with Lyft. To the extent Lyft asserts it has already provided the required, responsive information relevant to each non-custodial source related to a particular topic, Lyft need only provide a definitive statement of when that statement was provided, and that there is no additional information that may be provided. Further, the parties are continue to meet and confer regarding security measures for production of sensitive safety data (Dkt. 496 at 5). Following Lyft's supplemental disclosures, the parties will meet and confer regarding any remaining deficiencies and the scope, format, and security requirements for producing structured data, and will address the same through PTO 18 briefing and in the report for the December 8, 2026 conference. (*Id.* at 4–5.)

**B. Lyft's Statement**

On November 9, 2026, the Court directed Plaintiffs to "provide a list of topics covered by its Requests for Production where there is still a lack of clarity regarding the non-custodial sources of ESI pertinent to that topic." (Dkt. 496 at 4.) Plaintiffs thereafter provided a list of 55 "topics" not tied to any request for production and without any explanation regarding what it is Plaintiffs are seeking clarity about regarding any of their listed "topics" (Lyft Exhibit A), all of which seems to ignore much of what has happened in the case. For example, Lyft has already provided extensive information regarding its non-custodial data sources for many of Plaintiffs' purported topics and, therefore, it is unclear what Plaintiffs believe they do not yet have.

The parties will need to confer about Plaintiffs' topics, including because for numerous topics, Lyft cannot make heads or tails of what Plaintiffs are seeking. For example, one of Plaintiffs' purported topics is "Dashboards"—which merely is a term describing what could refer to countless interfaces used by Lyft that have no bearing on any of Plaintiffs' claims or document requests. Another—"Internal Listserves"—is similarly confusing, as it is unclear what Plaintiffs are seeking and how it would require the identification of non-custodial data sources. Plaintiffs also include four "Report" "topics" separately, including "Reports (audited)," "Reports (invalid and/or incomplete)," "Reports (published)," and "Reports (received)." Simply put, Lyft does not believe

it yet has the requisite clarity from Plaintiffs regarding what they are seeking (and why), and it anticipates the parties working together so that Plaintiffs can provide it. In all events, Lyft is working on a chart consistent with the Court's order.

## VI. Lyft's Identification of Litigation-Hold Information

### A. Plaintiffs' Statement

On October 12, 2026, Plaintiffs wrote to Lyft identifying specific Lyft employees, including senior executives, and requesting the dates on which each was placed on a litigation hold. In its October 20, 2026 response, Lyft disclosed that one of the identified individuals had not been placed on any litigation hold before Lyft implemented its MDL-specific hold, and that each of the remaining individuals was not placed on a hold for this litigation until the MDL-specific hold was implemented, but had previously been placed on holds issued in other matters. Lyft represented that those other holds "would have prevented the inadvertent deletion of these individuals' data and documents related to the claims in this MDL," but it did not identify the matters for which those holds were issued or describe their scope.

Plaintiffs have requested that Lyft identify and describe the matters for which these individuals were placed on hold by case number, name, date(s) the hold was placed, and dates covered by the hold. Without it, neither Plaintiffs nor the Court can test Lyft's assertion that holds issued in other matters preserved documents relevant to this litigation, because Plaintiffs cannot determine whether the subject matter, custodial data sources, and time periods covered by those holds encompassed the issues in this MDL for the period before these individuals were added to the MDL hold. In addition, Lyft has previously disclosed Disco as the non-custodial source where litigation hold information is kept in the normal course of business. Production of the information Plaintiffs seek has long been contemplated by Plaintiffs and is appropriate as non-custodial discovery. Plaintiffs will continue to meet and confer with Lyft and raise any further disputes with the Court through the PTO 18 process.

### B. Lyft's Statement

In the intervening weeks since Lyft's disclosure to Plaintiffs on October 20, 2026 related to litigation holds, Plaintiffs have said nothing to suggest that this issue is still open or that they sought further conferrals or intended to raise any issue in the PTO 18 process. The mutual exchange process for a joint status report is not the time for Plaintiffs to resurrect issues.

In any event, Plaintiffs identify no authority under which they are entitled to this work product. It is the legal department at Lyft that manages legal holds. Plaintiffs have no reason to believe that relevant, responsive information has been destroyed through Lyft's regular business operations. This suggestion of the need for premature discovery on discovery is unwarranted and, at a minimum, an attempt to ambush Lyft and raise premature issues to the Court.

## VII. Pending PTO 18 Brief

The following Joint PTO 18 Letter Briefs and Motion are presently pending before the Court:

- Joint PTO 18 Letter Brief Regarding Proposed Privileged Materials Order (Dkt. 501)
- Joint PTO 18 Letter Brief Regarding Lyft's Discovery Responses (Dkt. 482)
- Application regarding preservation order (Dkt. 246; response at Dkt. 272)

Dated: November 16, 2026

Respectfully submitted,

By: _/s/ Aimee Wagstaff_____
Aimee Wagstaff (SBN 278480)
**WAGSTAFF LAW FIRM**
940 N. Lincoln Street
Denver, CO 80203
Telephone: (303)376-6360
awagstaff@wagstafflawfirm.com

Rachel B. Abrams (SBN 209316)
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

Roopal P. Luhana, Esq.
**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

By: __*/s/ David Riskin*_____
David Randall J. Riskin (admitted *pro hac vice*)
Beth A. Stewart (admitted *pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
driskin@wc.com
bstewart@wc.com

Nadine S. Kohane (admitted *pro hac vice*)
**BARNES & THORNBURG LLP**
390 Madison Ave., 12th Floor
New York, NY 10017
Telephone: (646) 746-2000
Facsimile: (646) 746-2001
nkohane@btlaw.com

*Counsel for Defendant Lyft, Inc.*

Kristen L. Richer (SBN 315883)
Joshua J. Wes (SBN 238541)
**BARNES & THORNBURG LLP**
2029 Century Park East, Ste. 300
Los Angeles, CA 90067
Telephone: (310) 284-3880
Facsimile: (310) 284-3894
kricher@btlaw.com
jwes@btlaw.com

*Defense Liaison Counsel and*
*Counsel for Defendant Lyft, Inc.*

**FILERS ATTESTATION**

Under Civil Local Rule 5-1(h)(3), I attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: November 16, 2026

By: */s/ Aimee Wagstaff*__
Aimee Wagstaff, Esq.